**UNITED STATES of America, Appellant,**

v.

**Jerry SCHNEIDERMAN, Jerry Ranallo, Larry Butler and Insertion Advertising Corp., Appellees.**

**No. 1109, Docket 91–1695.**

United States Court of Appeals,
Second Circuit.

Argued March 24, 1992.

Decided July 9, 1992.

Seth C. Farber, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., S.D. New York, Michele Hirshman, Katherine A. Bostick, Asst. U.S. Attys., of counsel), for appellant.

Joshua L. Dratel, New York City (Gerald B. Lefcourt, P.C., of counsel), for appellee Jerry Ranallo.

Richard Ware Levitt, New York City, for appellee Jerry Schneiderman and Insertion Advertising Corp.

Diarmuid White, New York City (Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, of counsel), for appellee Larry Butler.

Before: LUMBARD, NEWMAN, and CARDAMONE, Circuit Judges.

LUMBARD, Circuit Judge:

The government appeals from an order of the District Court for the Southern District of New York, Robert W. Sweet, *Judge*, which dismissed a fourteen-count indictment charging violations of the Mail Order Drug Paraphernalia Control Act, 21 U.S.C. § 857,[1] based on a determination that the statute is unconstitutionally vague. Because we conclude that § 857 includes a scienter requirement, it is not unconstitutional, either on its face or as applied to defendants. Accordingly, the order of dismissal is reversed and the case is remanded.

On August 22, 1990, the government obtained warrants to search the offices of Insertion Advertising and Central City Restaurant Supply Co., both located at 132 West 24th Street in Manhattan, to search the apartment of their owner, Jerry Schneiderman, and to seize three bank accounts. The warrants were based on affidavits of U.S. Customs Special Service Agent Peter Arnone who stated he had probable cause to believe Insertion Advertising and Central City were violating drug paraphernalia and money laundering laws. In the search that followed, government agents seized a large number of dual purpose objects, including rolling papers, stash cans, roach clips, mannitol, hemostats, glassine envelopes, amber glass containers and caps, nitrous oxide containers, balloons and various scales.[2] None of the objects are themselves illegal, but all can be used in illegal activities.

On October 5, 1990, a grand jury returned a fourteen-count indictment against the defendants. Five counts charged them with violating 21 U.S.C. § 857(a)(1) by "unlawfully, willfully and knowingly" making use of interstate conveyances as part of a scheme to sell drug paraphernalia. Six counts further charged them with "unlawfully, willfully and knowingly" offering drug paraphernalia for sale and transportation in interstate commerce in violation of 21 U.S.C. § 857(a)(2). The indictment also included two money laundering counts and a conspiracy count.

1. The full text of 21 U.S.C. § 857 is reproduced in an appendix to this opinion. The Mail Order Drug Paraphernalia Control Act was repealed and reenacted by the Crime Control Act of 1990, Pub.L. No 101–647, § 2401, 104 Stat. 4789, 4858–59 (codified at 21 U.S.C.A. § 863 (West Supp.1992)).

2. Many of the objects seized do not fit the narrowly tailored definition of paraphernalia which this court has adopted since Judge Sweet issued his order. *See United States v. Hong–Liang Lin*, 962 F.2d 251, 251–58 (2d Cir.1992). However, at least some of the items allegedly involved here do meet the statutory standard. *See* 21 U.S.C. § 857(d)(5) (specifically including roach clips as an example of paraphernalia). We leave it to the district court to evaluate the alleged paraphernalia in light of our holding in *Lin*.

Defendants moved to suppress all the seized objects as the fruit of illegal searches and to dismiss the indictment on the ground that 21 U.S.C. § 857 was unconstitutionally vague as applied to them. On October 29, 1991, Judge Sweet denied the motion to suppress but dismissed the indictment because he concluded § 857 was unconstitutionally vague. Since he believed the statute does not require scienter, Judge Sweet found the average person could not determine whether any given item qualified as paraphernalia for purposes of the statute. Therefore, those dealing in such articles were not given sufficient notice of proscribed conduct to meet the requirements of due process. Finding the provision unconstitutional, Judge Sweet dismissed the indictment. 777 F.Supp. 258. This appeal followed.

The government challenges the determination that § 857 is unconstitutionally vague. The Supreme Court has repeatedly held that "the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*." *Colautti v. Franklin*, 439 U.S. 379, 395, 99 S.Ct. 675, 685, 58 L.Ed.2d 596 (1979). In fact, the inclusion of an intent provision will often save an otherwise vague statute. *See Village of Hoffman Estates v. The Flipside*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).

I. *Scienter*

▪ We first consider whether § 857 includes a scienter element, and then, if so, the content of that element. Federal courts have long held that imposition of criminal liability usually requires a finding of mental culpability. *See Morissette v. United States*, 342 U.S. 246, 250–52, 72 S.Ct. 240, 243–44, 96 L.Ed. 288 (1952). "Certainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement." *United States v. United States Gypsum Co.*, 438 U.S. 422, 438, 98 S.Ct. 2864, 2874, 57 L.Ed.2d 854 (1978); *see also Liparota v. United States*, 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985) ("[T]he failure of Congress explicitly and unambiguously to indicate whether *mens rea* is required does not signal a departure from this background assumption of our criminal law.").

We believe that Congress intended to include a scienter provision in § 857. The key language is contained in subsection 857(d), which defines "drug paraphernalia" to include only those items "primarily intended or designed for use" with illegal drugs. This phrase serves two purposes: it circumscribes the category of items a defendant may be punished for distributing, and it also strongly implies that some mental state is required. We agree with other courts construing this language to require scienter. *See United States v. 57,-261 Items of Drug Paraphernalia*, 869 F.2d 955, 957 (6th Cir.), *cert. denied*, 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989); *United States v. 3520 Brighton Boulevard*, 785 F.Supp. 141, 143 (D.Colo. 1992); *United States v. Main Street Distributing Inc.*, 700 F.Supp. 655, 666 (E.D.N.Y.1988).

In ruling that § 857 does not require scienter, Judge Sweet relied on differences between § 857 and the DEA Model Drug Paraphernalia Act on which it was patterned. The Model Act contains an explicit scienter requirement, one framed in terms of knowledge, either actual or constructive. It punishes a person who delivers drug paraphernalia "knowing, or under the circumstances where one reasonably should know, that it will be used" with illegal drugs. Model Act, art. II, § C (1979). This phrasing does not appear in § 857.

We recently relied on differences between § 857 and the Model Act as an aid in classifying the items covered by § 857. *See United States v. Hong–Liang Lin*, 962 F.2d 251, 256–57 (2d Cir.1992) (omission of cocaine vials, listed in Model Act, indicates that § 857 does not cover such items). It does not follow, however, that such a comparison should determine whether § 857 requires scienter. The absence from § 857 of the Model Act language does not override the presumption in favor of requiring scienter, especially in light of other textual

support suggesting that Congress intended that § 857 include a scienter element.

Since the scienter standard is not explicitly set forth but only implied by the wording of the definitional section, it is not surprising that the content of the element is somewhat uncertain. The uncertainty arises both from the different meanings of the word "intent" in criminal statutes and from the special complication in this statute that the phrase "primarily intended or designed for use" serves the dual purpose of defining the item and implying a scienter requirement.

Fortunately, the legislative history of § 857 offers some guidance. During hearings on the bill that became § 857, Representative McCollum questioned Representative Levine, the sponsor of the bill, about the intent language. After recognizing that the phrase "designed for use" was clearly very narrow, Representative McCollum asked for clarification of "primarily intended for the use." Acknowledging that scienter was necessary, Representative Levine stated that the government would be required to prove "intent on the part of the defendant in a particular trial" to obtain a conviction under the "primarily intended" standard. *Mail Order Drug Paraphernalia Control Act: Hearings on H.R. 1625 Before the Subcomm. on Crime of the House Comm. of the Judiciary,* 99th Cong., 2d Sess. 19–21 (1986).

■ Accordingly, we find that "primarily intended" refers only to the subjective intent of the person charged with dealing in the proscribed articles. Intent here, however, refers only to knowledge about likely consequences. To show a defendant "primarily intended" to sell drug paraphernalia, the government need not show that the items would necessarily be used in connection with illegal drugs, but it must prove that the defendant knew there was a strong probability the items would be so used. *See 57,261 Items of Drug Paraphernalia,* 869 F.2d at 957 ("The person to whom the statute is being applied ... must have knowledge that there is a strong probability that the items will be used" with illegal drugs.); *3520 Brighton Boulevard,*

785 F.Supp. at 143 ("[T]he only person whose intent is relevant for purposes of prosecution under this statute is that of the defendant on trial."); *Main Street Distributing Inc.,* 700 F.Supp. at 666 (The statute focuses on "a defendant's use of the mails ... to facilitate transactions involving items that a defendant has designed or intends for use as drug paraphernalia ... regardless of what an ultimate purchaser contemplates or what the defendant knows in that regard.").

■ The second category of items covered by § 857 are those items "designed for use" with illegal drugs. Under this standard, a product qualifies as paraphernalia if it is "principally used with illegal drugs by virtue of its objective features." *Hoffman Estates,* 455 U.S. at 501, 102 S.Ct. at 1195 ("designed for use" is determined by the design of the manufacturer, not the intent of the retailer or customer); *see also United States v. Dyer,* 750 F.Supp. 1278, 1284–1286 (E.D.Va.1990). Dual purpose objects are highly unlikely to meet this standard. *See Hoffman Estates,* 455 U.S. at 501, 102 S.Ct. at 1195 ("It is also sufficiently clear that items which are principally used for nondrug purposes ... are not 'designed for use' with illegal drugs."). If the objective features of an item establish *per se* that it is "designed for use" with illegal drugs, the scienter element is satisfied.

## II. *Vagueness*

■ Although Judge Sweet's opinion did not specify whether he found § 857 unconstitutionally vague on its face or vague as applied to these defendants, the defendants press both theories on appeal. The claim of facial vagueness has no merit. To show a statute is unconstitutionally vague on its face, "[t]he complainant must prove that the enactment is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. Such a provision simply has no core.'" *Hoffman Estates,* 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7 (quoting

*Smith v. Goguen,* 415 U.S. 566, 578, 94 S.Ct. 1242, 1249, 39 L.Ed.2d 605 (1974) (citation omitted)). In other words, the statute must be impermissibly vague in all of its applications. *Hoffman Estates,* 455 U.S. at 495, 102 S.Ct. at 1191. Because § 857 clearly prohibits trade in hard-core drug paraphernalia having no alternative uses, the statute is not vague on its face. *See Dyer,* 750 F.Supp. at 1294–95.

■ To determine whether a statute is unconstitutionally vague as applied, the Supreme Court has articulated a two-part test: the court must first determine whether the statute "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and then consider whether the law "provide[s] explicit standards for those who apply [it]." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972) (footnote omitted); *see also Gentile v. State Bar of Nevada,* — U.S. —, 111 S.Ct. 2720, 2732, 115 L.Ed.2d 888 (1991); *Hoffman Estates,* 455 U.S. at 498, 102 S.Ct. at 1193.

The scienter element in § 857 ensures that defendants have notice that their conduct is prohibited. *See Hoffman Estates,* 455 U.S. at 499, 102 S.Ct. at 1193 (A "scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice ... that [the] conduct is proscribed."). Because defendants must have the requisite scienter in order to violate the statute, it poses no trap for the innocent and survives the first prong of the vagueness test.

■ Furthermore, § 857 provides sufficient guidance to prohibit its arbitrary or discriminatory application. Effective law enforcement often "requires the exercise of some degree of police judgment" but this alone does not render a statute unconstitutional. *Grayned,* 408 U.S. at 114, 92 S.Ct. at 2302. Provisions in the statute itself strive to channel enforcement activities: subsection (d) offers 15 examples of targeted paraphernalia and subsection (e) lists eight factors to consider among "all other logically relevant factors" in determining whether a defendant had the requi-site scienter to violate the statute. These guidelines tend to minimize the likelihood of arbitrary enforcement by providing objective criteria against which to measure possible violations of the law. *See Murphy v. Matheson,* 742 F.2d 564, 574 (10th Cir. 1984). In addition, the exemptions provided in § 857(f) restrict the range of the statute and help safeguard legitimate users of legal products from discriminatory enforcement. The guidelines and exemptions, taken together, narrow the scope of § 857 sufficiently to eliminate potentially vague or arbitrary interpretations. *Cf. Hoffman Estates,* 455 U.S. at 504, 102 S.Ct. at 1196 (administrative regulations can suffice to clarify a standard which might otherwise be uncertain).

Because we conclude that § 857 requires scienter and is not unconstitutionally vague, either on its face or as applied to the defendants, the order of dismissal is reversed and the case is remanded for further proceedings.

## APPENDIX

§ 857. Interstate and foreign sale and transportation of drug paraphernalia

(a) Unlawful acts

It is unlawful for any person—

(1) to make use of the services of the Postal Service or other interstate conveyance as part of a scheme to sell drug paraphernalia;

(2) to offer for sale and transportation in interstate or foreign commerce drug paraphernalia; or

(3) to import or export drug paraphernalia.

(b) Penalties

Anyone convicted of an offense under subsection (a) of this section shall be imprisoned for not more than three years and fined not more than $100,000.

(c) Seizure and forfeiture

Any drug paraphernalia involved in any violation of subsection (a) of this section shall be subject to seizure and forfeiture

upon the conviction of a person for such violation. Any such paraphernalia shall be delivered to the Administrator of General Services, General Services Administration, who may order such paraphernalia destroyed or may authorize its use for law enforcement or educational purposes by Federal, State, or local authorities.

(d) Definition of "drug paraphernalia"

The term "drug paraphernalia" means any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful under the Controlled Substances Act (title II of Public Law 91-513). It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, or amphetamines into the human body, such as—

(1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(2) water pipes;

(3) carburetion tubes and devices;

(4) smoking and carburetion masks;

(5) roach clips: meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand;

(6) miniature spoons with level capacities of one-tenth cubic centimeter or less;

(7) chamber pipes;

(8) carburetor pipes;

(9) electric pipes;

(10) air-driven pipes;

(11) chillums;

(12) bongs;

(13) ice pipes or chillers;

(14) wired cigarette papers; or

(15) cocaine freebase kits.

(e) Matters considered in determination of what constitutes drug paraphernalia

In determining whether an item constitutes drug paraphernalia, in addition to all other logically relevant factors, the following may be considered:

(1) instructions, oral or written, provided with the item concerning its use;

(2) descriptive materials accompanying the item which explain or depict its use;

(3) national and local advertising concerning its use;

(4) the manner in which the item is displayed for sale;

(5) whether the owner, or anyone in control of the item, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(6) direct or circumstantial evidence of the ratio of sales of the item(s) to the total sales of the business enterprise;

(7) the existence and scope of legitimate uses of the item in the community;

(8) expert testimony concerning its use.

(f) Exemptions

This section shall not apply to—

(1) any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items; or

(2) any item that, in the normal lawful course of business, is imported, exported, transported, or sold through the mail or by any other means, and traditionally intended for use with tobacco products, including any pipe, paper, or accessory.

21 U.S.C. § 857.