## POSTERS·'N' THINGS, LTD., ET AL. *v.* UNITED STATES

No. 92–903.   Argued October 5, 1993—Decided May 23, 1994

514

BLACKMUN, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, SOUTER, and GINSBURG, JJ., joined. SCALIA, J., filed an opinion concurring in the judgment, in which KENNEDY and THOMAS, JJ., joined, *post*, p. 527.

*Alfredo Parrish* argued the cause for petitioners. With him on the brief was *Elizabeth Kruidenier.*

*Deputy Solicitor General Bryson* argued the cause for the United States. With him on the brief were *Solicitor General Days, Acting Assistant Attorney General Keeney, Robert A. Long, Jr.,* and *Joel M. Gershowitz.*

JUSTICE BLACKMUN delivered the opinion of the Court.

In this case we must address the scienter requirement of the Mail Order Drug Paraphernalia Control Act, Pub. L. 99–570, Tit. I, §1822, 100 Stat. 3207–51, formerly codified, as amended, at 21 U. S. C. §857, and the question whether the Act is unconstitutionally vague as applied to petitioners.

I

In 1977, petitioner Lana Christine Acty formed petitioner Posters 'N' Things, Ltd. (Posters), an Iowa corporation. The corporation operated three businesses, a diet-aid store, an art gallery, and a general merchandise outlet originally called "Forbidden Fruit," but later renamed "World Wide Imports." Law enforcement authorities received complaints that the merchandise outlet was selling drug paraphernalia. Other officers investigating drug cases found drug diluents (chemicals used to "cut" or dilute illegal drugs) and other drug paraphernalia that had been purchased from Forbidden Fruit.

In March 1990, officers executed warrants to search petitioners' business premises and Acty's residence. They seized various items, including pipes, bongs,[1] scales, roach clips,[2] and drug diluents including mannitol and inositol. The officers also seized cash, business records, and catalogs and advertisements describing products sold by petitioners. The advertisements offered for sale such products as "Coke Kits," "Free Base Kits,"[3] and diluents sold under the names "PseudoCaine" and "Procaine."

Indictments on a number of charges relating to the sale of drug paraphernalia eventually were returned against petitioners and George Michael Moore, Acty's husband. A joint trial took place before a jury in the United States District Court for the Southern District of Iowa.

Petitioners were convicted of using an interstate conveyance as part of a scheme to sell drug paraphernalia, in violation of former 21 U. S. C. §857(a)(1), and of conspiring to commit that offense, in violation of 18 U. S. C. §371. Petitioner Acty also was convicted of aiding and abetting the manufacture and distribution of cocaine, in violation of 21 U. S. C. §841(a)(1); investing income derived from a drug offense, in violation of 21 U. S. C. §854; money laundering, in violation of 18 U. S. C. §1956(a)(1); and engaging in monetary transactions with the proceeds of unlawful activity, in violation of 18 U. S. C. §1957. Acty was sentenced to imprisonment for 108 months, to be followed by a 5-year term

---

[1] A "bong" is a "water pipe that consists of a bottle or a vertical tube partially filled with liquid and a smaller tube ending in a bowl, used often in smoking narcotic substances." American Heritage Dictionary 215 (3d ed. 1992).

[2] The statute defines "roach clips" as "objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand." 21 U. S. C. §857(d)(5).

[3] The term "freebase" means "[t]o purify (cocaine) by dissolving it in a heated solvent and separating and drying the precipitate" or "[t]o use (cocaine purified in this way) by burning it and inhaling the fumes." American Heritage Dictionary 723 (3d ed. 1992).

of supervised release, and was fined $150,000. Posters was fined $75,000.

The United States Court of Appeals for the Eighth Circuit affirmed the convictions. 969 F. 2d 652 (1992). Because of an apparent conflict among the Courts of Appeals as to the nature of the scienter requirement of former 21 U. S. C. § 857,[4] we granted certiorari. 507 U. S. 971 (1993).

## II

Congress enacted the Mail Order Drug Paraphernalia Control Act as part of the Anti-Drug Abuse Act of 1986, Pub. L. 99–570, 100 Stat. 3207. As originally enacted, and as applicable in this case, the statute, 21 U. S. C. § 857(a),[5] provides:

> "It is unlawful for any person—
>
> "(1) to make use of the services of the Postal Service or other interstate conveyance as part of a scheme to sell drug paraphernalia;
>
> "(2) to offer for sale and transportation in interstate or foreign commerce drug paraphernalia; or
>
> "(3) to import or export drug paraphernalia."

Section 857(b) provides that anyone convicted under the statute shall be imprisoned for not more than three years and fined not more than $100,000.

---

[4] Compare the decision of the Eighth Circuit in this case with *United States* v. *Mishra,* 979 F. 2d 301 (CA3 1992); *United States* v. *Murphy,* 977 F. 2d 503 (CA10 1992); *United States* v. *Schneiderman,* 968 F. 2d 1564 (CA2 1992), cert. denied, 507 U. S. 921 (1993); and *United States* v. *57,261 Items of Drug Paraphernalia,* 869 F. 2d 955 (CA6), cert. denied, 493 U. S. 933 (1989).

[5] In 1990, Congress repealed § 857 and replaced it with 21 U. S. C. § 863 (1988 ed., Supp. IV). See Crime Control Act of 1990, Pub. L. 101–647, § 2401, 104 Stat. 4858. The language of § 863 is identical to that of former § 857 except in the general description of the offense. Section 863(a) makes it unlawful for any person "(1) to sell or offer for sale drug paraphernalia; (2) to use the mails or any other facility of interstate commerce to transport drug paraphernalia; or (3) to import or export drug paraphernalia."

A

Section 857(a) does not contain an express scienter requirement.   Some courts, however, have located a scienter requirement in the statute's definitional provision, § 857(d), which defines the term "drug paraphernalia" as "any equipment, product, or material of any kind which is primarily intended or designed for use" with illegal drugs.[6]   Petitioners argue that the term "primarily intended" in this provision establishes a subjective-intent requirement on the part of the defendant.   We disagree, and instead adopt the Gov-

---

[6] Section 857(d) provides in full:

"The term 'drug paraphernalia' means any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful under the Controlled Substances Act (title II of Public Law 91–513) [21 U. S. C. §§ 801 et seq.].   It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, or amphetamines into the human body, such as—

"(1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

"(2) water pipes;

"(3) carburetion tubes and devices;

"(4) smoking and carburetion masks;

"(5) roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;

"(6) miniature spoons with level capacities of one-tenth cubic centimeter or less;

"(7) chamber pipes;

"(8) carburetor pipes;

"(9) electric pipes;

"(10) air-driven pipes;

"(11) chillums;

"(12) bongs;

"(13) ice pipes or chillers;

"(14) wired cigarette papers; or

"(15) cocaine freebase kits."

ernment's position that § 857(d) establishes objective standards for determining what constitutes drug paraphernalia.

Section 857(d) identifies two categories of drug paraphernalia: items "primarily intended . . . for use" with controlled substances and items "designed for use" with such substances. This Court's decision in *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U. S. 489, 500 (1982), governs the "designed for use" prong of § 857(d). In that case, the Court considered an ordinance requiring a license for the sale of items "designed or marketed for use with illegal cannabis or drugs," and concluded that the alternative "designed . . . for use" standard referred to "the design of the manufacturer, not the intent of the retailer or customer." *Id.,* at 501. An item is "designed for use," this Court explained, if it "is principally used with illegal drugs by virtue of its objective features, *i. e.,* features designed by the manufacturer." *Ibid.*

The objective characteristics of some items establish that they are designed specifically for use with controlled substances. Such items, including bongs, cocaine freebase kits, and certain kinds of pipes, have no other use besides contrived ones (such as use of a bong as a flower vase). Items that meet the "designed for use" standard constitute drug paraphernalia irrespective of the knowledge or intent of one who sells or transports them. See *United States* v. *Mishra*, 979 F. 2d 301, 308 (CA3 1992); *United States* v. *Schneiderman*, 968 F. 2d 1564, 1567 (CA2 1992), cert. denied, 507 U. S. 921 (1993). Accordingly, the "designed for use" element of § 857(d) does not establish a scienter requirement with respect to sellers such as petitioners.

The "primarily intended . . . for use" language of § 857(d) presents a more difficult problem. The language might be understood to refer to the state of mind of the defendant (here, the seller), and thus to require an intent on the part of the defendant that the items at issue be used with drugs. Some Courts of Appeals have adopted this construction, see

*Mishra,* 979 F. 2d, at 307; *United States* v. *Murphy,* 977 F. 2d 503, 506 (CA10 1992); *Schneiderman,* 968 F. 2d, at 1567; *United States* v. *57,261 Items of Drug Paraphernalia,* 869 F. 2d 955, 957 (CA6), cert. denied, 493 U. S. 933 (1989), and this Court in *Hoffman Estates* interpreted the arguably parallel phrase "marketed for use" as describing "a retailer's intentional display and marketing of merchandise," 455 U. S., at 502, and thus requiring scienter. On the other hand, there is greater ambiguity in the phrase "primarily intended . . . for use" than in the phrase "marketed for use." The term "primarily intended" could refer to the intent of non-defendants, including manufacturers, distributors, retailers, buyers, or users. Several considerations lead us to conclude that "primarily intended . . . for use" refers to a product's likely use rather than to the defendant's state of mind.

First, the structure of the statute supports an objective interpretation of the "primarily intended . . . for use" standard. Section 857(d) states that drug paraphernalia "includes items primarily intended or designed for use in" consuming specified illegal drugs, "*such as* . . . ," followed by a list of 15 items constituting *per se* drug paraphernalia. The inclusion of the "primarily intended" term along with the "designed for use" term in the introduction to the list of *per se* paraphernalia suggests that at least some of the *per se* items could be "primarily intended" for use with illegal drugs irrespective of a particular defendant's intent—that is, as an objective matter. Moreover, § 857(e) lists eight objective factors that may be considered "in addition to all other logically relevant factors" in "determining whether an item constitutes drug paraphernalia."[7] These factors generally

---

[7] Section 857(e) provides:

"In determining whether an item constitutes drug paraphernalia, in addition to all other logically relevant factors, the following may be considered:

"(1) instructions, oral or written, provided with the item concerning its use;

focus on the actual use of the item in the community. Congress did not include among the listed factors a defendant's statements about his intent or other factors directly establishing subjective intent. This omission is significant in light of the fact that the parallel list contained in the Drug Enforcement Administration's Model Drug Paraphernalia Act, on which § 857 was based,[8] includes among the relevant factors "[s]tatements by an owner . . . concerning [the object's] use" and "[d]irect or circumstantial evidence of the intent of an owner . . . to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of this Act."[9]

An objective construction of the definitional provision also finds support in § 857(f), which establishes an exemption for items "traditionally intended for use with tobacco products."[10] An item's "traditional" use is not based on the sub-

---

"(2) descriptive materials accompanying the item which explain or depict its use;

"(3) national and local advertising concerning its use;

"(4) the manner in which the item is displayed for sale;

"(5) whether the owner, or anyone in control of the item, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

"(6) direct or circumstantial evidence of the ratio of sales of the item(s) to the total sales of the business enterprise;

"(7) the existence and scope of legitimate uses of the item in the community; and

"(8) expert testimony concerning its use."

[8] See *Schneiderman*, 968 F. 2d, at 1566.

[9] See Brief for United States 6a–7a. The Model Act lists 14 factors to be considered in addition to all other logically relevant factors in determining whether an object is drug paraphernalia. Several of the factors are similar or identical to those listed in § 857(e).

[10] Section 857(f) provides:

"This section shall not apply to—

"(1) any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items; or

"(2) any item that, in the normal lawful course of business, is imported, exported, transported, or sold through the mail or by any other means,

jective intent of a particular defendant. In 1988, Congress added the word "traditionally" in place of "primarily" in the § 857(f) exemption in order to "clarif[y]" the meaning of the exemption. Pub. L. 100–690, Tit. VI, § 6485, 102 Stat. 4384. Congress' characterization of the amendment as merely "clarifying" the law suggests that the original phrase—"primarily intended"—was not a reference to the fundamentally different concept of a defendant's subjective intent.

Finally, an objective construction of the phrase "primarily intended" is consistent with the natural reading of similar language in definitional provisions of other federal criminal statutes. See 18 U. S. C. § 921(a)(17)(B) ("armor piercing ammunition" excludes any projectile that is "primarily intended" to be used for sporting purposes, as found by the Secretary of the Treasury); 21 U. S. C. § 860(d)(2) (1988 ed., Supp. V) ("youth center" means a recreational facility "intended primarily for use by persons under 18 years of age").

We conclude that the term "primarily intended . . . for use" in § 857(d) is to be understood objectively and refers generally to an item's likely use.[11] Rather than serving as the

_____

and traditionally intended for use with tobacco products, including any pipe, paper, or accessory."

[11] Although we describe the definition of "primarily intended" as "objective," we note that it is a relatively particularized definition, reaching beyond the category of items that are likely to be used with drugs by virtue of their objective features. Among the factors that are relevant to whether an item constitutes drug paraphernalia are "instructions, oral or written, provided with the item concerning its use," § 857(e)(1), and "the manner in which the item is displayed for sale," § 857(e)(4). Thus, while scales or razor blades as a general class may not be designed specifically for use with drugs, a subset of those items in a particular store may be "primarily intended" for use with drugs by virtue of the circumstances of their display and sale.

We disagree with JUSTICE SCALIA insofar as he would hold that a box of paper clips is converted into drug paraphernalia by the mere fact that a customer mentions to the seller that the paper clips will make excellent roach clips. Section 857(d) states that items *"primarily* intended" for use with drugs constitute drug paraphernalia, indicating that it is the likely

basis for a subjective scienter requirement, the phrase "primarily intended or designed for use" in the definitional provision establishes objective standards for determining what constitutes drug paraphernalia.[12]

B

Neither our conclusion that Congress intended an objective construction of the "primarily intended" language in § 857(d), nor the fact that Congress did not include the word "knowingly" in the text of § 857, justifies the conclusion that Congress intended to dispense entirely with a scienter requirement. This Court stated in *United States* v. *United States Gypsum Co.*, 438 U. S. 422, 438 (1978): "Certainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement." Even statutes creating public welfare offenses generally require proof that the defendant had knowledge of sufficient facts to alert him to the probability of regulation of his potentially dangerous conduct. See *Staples* v. *United States, post,* at 607, and n. 3;

use of customers generally, not any particular customer, that can render a multiple-use item drug paraphernalia.

[12] The legislative history of the Mail Order Drug Paraphernalia Control Act consists of one House subcommittee hearing. See Hearing on H. R. 1625 before the Subcommittee on Crime of the House Committee on the Judiciary, 99th Cong., 2d Sess. (1986). We recognize that a colloquy with the principal House sponsor of the Act during this hearing lends some support to a subjective interpretation of the "primarily intended" language of § 857(d). When asked to whose intent this language referred, Rep. Levine initially stated: "The purpose of the language . . . is to identify as clearly as possible the intent of manufacturer and the seller to market a particular item as drug paraphernalia, subject to the interpretation of a trial court." *Id.,* at 48. When pressed further, he stated: "[I]t would be the intent on the part of the defendant in a particular trial." *Ibid.* Given the language and structure of the statute, we are not persuaded that these comments of a single member at a subcommittee hearing are sufficient to show a desire on the part of Congress to locate a scienter requirement in the definitional provision of § 857.

*United States* v. *Dotterweich,* 320 U. S. 277, 281 (1943). We conclude that § 857 is properly construed as containing a scienter requirement.

We turn to the nature of that requirement in this statute. In *United States* v. *Bailey,* 444 U. S. 394, 404 (1980), this Court distinguished between the mental states of "'purpose'" and "'knowledge,'" explaining, *id.,* at 408, that, "except in narrow classes of offenses, proof that the defendant acted knowingly is sufficient to support a conviction." In *Bailey,* the Court read into the federal escape statute, 18 U. S. C. § 751(a), a requirement that "an escapee knew his actions would result in his leaving physical confinement without permission," rejecting a heightened *mens rea* that would have required "'an intent to avoid confinement.'" 444 U. S., at 408. Similarly, in *United States* v. *United States Gypsum Co.,* 438 U. S., at 444, the Court addressed the question whether a criminal violation of the Sherman Act "requires, in addition to proof of anticompetitive effects, a demonstration that the disputed conduct was undertaken with the 'conscious object' of producing such effects, or whether it is sufficient that the conduct is shown to have been undertaken with knowledge that the proscribed effects would most likely follow." The Court concluded that "action undertaken with knowledge of its probable consequences ... can be a sufficient predicate for a finding of criminal liability under the antitrust laws." *Ibid.*

As in *Bailey* and *United States Gypsum,* we conclude that a defendant must act knowingly in order to be liable under § 857. Requiring that a seller of drug paraphernalia act with the "purpose" that the items be used with illegal drugs would be inappropriate. The purpose of a seller of drug paraphernalia is to sell his product; the seller is indifferent as to whether that product ultimately is used in connection with illegal drugs or otherwise. If § 857 required a purpose that the items be used with illegal drugs, individuals could avoid liability for selling bongs and cocaine freebase kits simply by

establishing that they lacked the "conscious object" that the items be used with illegal drugs.

Further, we do not think that the knowledge standard in this context requires knowledge on the defendant's part that a particular customer actually will use an item of drug paraphernalia with illegal drugs. It is sufficient that the defendant be aware that customers in general are likely to use the merchandise with drugs. Therefore, the Government must establish that the defendant knew that the items at issue are likely to be used with illegal drugs. Cf. *United States Gypsum*, 438 U. S., at 444 (knowledge of "probable consequences" sufficient for conviction).[13] A conviction under § 857(a)(1), then, requires the Government to prove that the defendant knowingly made use of an interstate conveyance as part of a scheme to sell items that he knew were likely to be used with illegal drugs.

Finally, although the Government must establish that the defendant knew that the items at issue are likely to be used with illegal drugs, it need not prove specific knowledge that the items are "drug paraphernalia" within the meaning of the statute. Cf. *Hamling* v. *United States*, 418 U. S. 87 (1974) (statute prohibiting mailing of obscene materials does

---

[13] The knowledge standard that we adopt parallels the standard applied by those courts that have based § 857's scienter requirement on the "primarily intended" language of the definitional provision. See *Mishra*, 979 F. 2d, at 307 (Government must prove that defendant "contemplated, or reasonably expected under the circumstances, that the item sold or offered for sale would be used with illegal drugs"); *Schneiderman*, 968 F. 2d, at 1567 (Government must prove that defendant "knew there was a strong probability the items would be so used"); *57,261 Items of Drug Paraphernalia*, 869 F. 2d, at 957 (Government must prove defendant's "knowledge that there is a strong probability that the items will be used" with illegal drugs). The scienter requirement that we have inferred applies with respect to all items of drug paraphernalia, while at least some of the lower courts appear to have confined their scienter requirement to those items "primarily intended" (but not "designed") for use with illegal drugs. See, e. g., *Schneiderman*, 968 F. 2d, at 1567.

not require proof that defendant knew the materials at issue met the legal definition of "obscenity"). As in *Hamling*, it is sufficient for the Government to show that the defendant "knew the character and nature of the materials" with which he dealt. *Id.*, at 123.

In light of the above, we conclude that the jury instructions given by the District Court adequately conveyed the legal standards for petitioners' convictions under § 857.[14]

## III

Petitioners argue that § 857 is unconstitutionally vague as applied to them in this case. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender* v. *Lawson*, 461 U. S. 352, 357 (1983); see also *Grayned* v. *Rockford*, 408 U. S. 104, 108–109 (1972). Whatever its status as a general matter, we cannot say that § 857 is unconstitutionally vague as applied in this case.

First, the list of items in § 857(d) constituting *per se* drug paraphernalia provides individuals and law enforcement officers with relatively clear guidelines as to prohibited conduct. With respect to the listed items, there can be little

---

[14] The District Court instructed the jury that, in order to find petitioners guilty, it was required to find that they "made use of [an] interstate conveyance knowingly as part of a scheme to sell drug paraphernalia," that "the items in question constitute drug paraphernalia," defined as items "primarily intended or designed for use" with illegal drugs, and that petitioners "knew the nature and character of the items." The District Court elaborated on the knowledge requirement, describing it as "knowledge of the defendants as to the nature, character, and use of the items being sold or offered for sale at the store." App. 16–35. We think that the instructions adequately informed the jury that it could convict petitioners only if it found that they knew that the items at issue were likely to be used with illegal drugs.

doubt that the statute is sufficiently determinate to meet constitutional requirements. Many items involved in this case—including bongs, roach clips, and pipes designed for use with illegal drugs—are among the items specifically listed in § 857(d).

Second, § 857(e) sets forth objective criteria for assessing whether items constitute drug paraphernalia. These factors minimize the possibility of arbitrary enforcement and assist in defining the sphere of prohibited conduct under the statute. See *Mishra*, 979 F. 2d, at 309; *Schneiderman*, 968 F. 2d, at 1568. Section 857(f)'s exemption for tobacco-related products further limits the scope of the statute and precludes its enforcement against legitimate sellers of lawful products.

Finally, the scienter requirement that we have inferred in § 857 assists in avoiding any vagueness problem. "[T]he Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice . . . that [the] conduct is proscribed." *Hoffman Estates*, 455 U. S., at 499.

Section 857's application to multiple-use items—such as scales, razor blades, and mirrors—may raise more serious concerns. Such items may be used for legitimate as well as illegitimate purposes, and "a certain degree of ambiguity necessarily surrounds their classification." *Mishra*, 979 F. 2d, at 309. This case, however, does not implicate vagueness or other due process concerns with respect to such items. Petitioners operated a full-scale "head shop," a business devoted substantially to the sale of products that clearly constituted drug paraphernalia. The Court stated in *Hoffman Estates:* "The theoretical possibility that the village will enforce its ordinance against a paper clip placed next to Rolling Stone magazine . . . is of no due process significance unless the possibility ripens into a prosecution." 455 U. S., at 503–504, n. 21. Similarly here, we need not address the possible application of § 857 to a legitimate merchant engaging in the sale of only multiple-use items.

## IV

Petitioner Acty's other contentions are not properly before the Court. First, she argues that she was improperly convicted of aiding and abetting the manufacture and distribution of cocaine because the jury instructions created a "presumption" that certain items of drug paraphernalia "were intended for manufacturing with a controlled substance." Brief for Petitioners 17. This argument was neither raised in nor addressed by the Court of Appeals. See *Lawn* v. *United States,* 355 U. S. 339, 362–363, n. 16 (1958). Second, Acty asserts that her convictions for money laundering, investing income derived from a drug offense, and engaging in monetary transactions with the proceeds of unlawful activity must be reversed. These contentions were not presented in the petition for writ of certiorari, and therefore they are not properly raised here. See this Court's Rule 14.1(a). Finally, the petition presented the question whether the proof was adequate to support Acty's conviction for aiding and abetting the manufacture and distribution of cocaine; but petitioners' brief on the merits fails to address the issue and therefore abandons it. See *Russell* v. *United States,* 369 U. S. 749, 754, n. 7 (1962).

Accordingly, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE SCALIA, with whom JUSTICE KENNEDY and JUSTICE THOMAS join, concurring in the judgment.

I agree with the Court that the sale of items likely to be used for drug purposes, with knowledge of such likely use, violates former 21 U. S. C. § 857; and that a subjective intent on the part of the defendant that the items sold be used for drug purposes is not necessary for conviction. That is all the scienter analysis necessary to decide the present case. The Court goes further, however, and says, *ante,* at 518–522, that such a subjective intent is not only not necessary for

conviction but is not sufficient for conviction—*i. e.*, that the sale of an item with the *intent* that it be used for drug purposes does not constitute a violation. I disagree. In my view, the statutory language "primarily intended . . . for use" causes a sale to be a sale of drug paraphernalia where the seller intends the item to be used for drug purposes. A rejection of that view, if consistently applied, would cause "primarily intended or designed for use" to mean nothing more than "designed for use." While redundancy is not unheard of in statutory draftsmanship, neither is it favored in statutory interpretation. *Kungys* v. *United States*, 485 U. S. 759, 778 (1988).

Some of the provisions of § 857(e), which describes factors that may be considered in determining whether an item constitutes drug paraphernalia, clearly suggest that what is *not* covered paraphernalia by nature can be *made* such by the seller's intent.* Section 857(e)(1) lists as one of the relevant factors "instructions, oral or written, provided with the item concerning its use." This envisions, I think, that a drugstore owner who instructs the purchaser how to use the purchased drinking straw or razor blade in the ingestion of drugs converts what would otherwise be a lawful sale into a sale of drug paraphernalia. Section 857(e)(4) lists as a relevant factor "the manner in which the item is displayed for sale." That would surely not change the nature of the item, but it would cast light upon the use intended by the person who is selling and displaying it. And § 857(e)(5) lists as a relevant factor "whether the owner . . . is a legitimate sup-

---

*For purposes of the present case, all we need decide is that the seller's intent will qualify. It would also seem true, however (since the statute contains no limitation on whose intent—manufacturer's, seller's, or buyer's—can qualify), that the *buyer's* intended use will cause an otherwise harmless item to be drug paraphernalia. To convict a seller on such a basis, of course, the scienter requirement of the statute would require that the seller have *known* of such intended use.

plier of like or related items." Again, that casts light upon nothing but the seller's intent regarding use.

On first glance, the Court's claim that "primarily intended" does not refer to the defendant's state of mind seems to be supported by § 857(f)(2), which exempts from the entire section the sale, "in the normal lawful course of business," of items "traditionally intended for use with tobacco products." This might be thought to suggest that the section applies only to categories of items, and not at all to items sold with a particular intent. On further consideration, however, it is apparent that § 857(f)(2) militates against, rather than in favor of, the Court's view. Unless unlawful intent could have produced liability, there would have been no *need* for the exception. Tobacco pipes are tobacco pipes, and cigarette paper is cigarette paper; neither could possibly meet the Court's test of being "items . . . likely to be used with illegal drugs," *ante*, at 524. Only the criminalizing effect of an unlawful *intent* to sell for drug use puts tobacconists at risk. Because of the ready (though not ordinary) use of items such as cigarette paper and tobacco pipes for drug purposes, tobacconists would have been in constant danger of being accused of having an unlawful intent in their sales—so Congress gave them what amounts to a career exception.

Through most of the Court's opinion, an item's "likely use" seems to refer to the objective features of the item that render it usable for one purpose or another. At the very end of the relevant discussion, however, in apparent response to the difficulties presented by the factors listed in § 857(e), one finds, in a footnote, the following:

> "Although we describe the definition of 'primarily intended' as 'objective,' we note that it is a relatively particularized definition, reaching beyond the category of items that are likely to be used with drugs by virtue of their objective features. . . . Thus, while scales or razor blades as a general class may not be designed specifi-

cally for use with drugs, a subset of those items in a particular store may be 'primarily intended' for use with drugs by virtue of the circumstances of their display and sale." *Ante,* at 521, n. 11.

If by the "circumstances of . . . sale" the Court means to include the circumstance that the seller says, "You will find these scales terrific for weighing drugs," or that the buyer asks, "Do you have any scales suitable for weighing drugs?"—then there is really very little, if any, difference between the Court's position and mine. Intent can only be known, of course, *through* objective manifestations. If what the Court means by "a relatively particularized objective definition" is that all objective manifestations of the seller's intent are to be considered part of the "circumstances of sale," then there is no difference whatever between us (though I persist in thinking it would be simpler to say that "intended for sale" means "intended for sale" than to invent the concept of "a relatively particularized objective intent"). If, on the other hand, only some and not all objective manifestations of the seller's intent are to be considered part of the "circumstances of sale" (manner of display, for example, but not manner of oral promotion), then the Court ought to provide some description of those that do and those that do not, and (if possible) some reason for the distinction.

Finally, I cannot avoid noting that the only available legislative history—statements by the very Congressman who introduced the text in question, see *ante,* at 522, n. 12—unambiguously supports my view. I point that out, not because I think those statements are pertinent to our analysis, but because it displays once again that our acceptance of the supposed teachings of legislative history is more sporadic than our professions of allegiance to it. See *Thunder Basin Coal Co.* v. *Reich,* 510 U. S. 200, 219 (1994) (SCALIA, J., concurring in part and concurring in judgment); *Wisconsin Public Intervenor* v. *Mortier,* 501 U. S. 597, 617 (1991) (SCALIA, J., concurring in judgment).