**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

           v.

JOEL ANDREW WYATT, aka
"Lupine"; REBECCA KAY SMITH,
           *Defendants-Appellants.*

No. 04-30316

D.C. No.
CR-02-00036-
DWM/LBE

OPINION

Appeal from the United States District Court
for the District of Montana (Missoula)
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
February 8, 2005—Seattle, Washington

Filed May 26, 2005

Before: Diarmuid F. O'Scannlain, M. Margaret McKeown,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

**COUNSEL**

David C. Avery, Federal Defenders of Montana, argued the cause for the appellant. John Rhodes and Jon Wilson, Federal Defenders of Montana, were also on the briefs.

Joshua S. Van De Wetering, Office of the U.S. Attorney, argued the cause for the appellee. William W. Mercer, Office of the U.S. Attorney, was also on the brief.

## OPINION

BEA, Circuit Judge:

Joel A. Wyatt and Rebecca Kay Smith (collectively "defendants") appeal their convictions for (1) using, or aiding and abetting the use of, a hazardous or injurious device on federal land with the intent to obstruct a timber harvest; and (2) maintaining an unauthorized structure on National Forest land. We have jurisdiction under 28 U.S.C. § 1291. We consider below whether 18 U.S.C. § 1864(a), which in part prohibits the use of hazardous or injurious devices on federal land with the intent to obstruct or harass the harvesting of timber, is unconstitutionally vague as applied here to visible and unmodified ropes strung above a proposed helicopter landing site.[1] We conclude the statute is not unconstitutionally vague as applied, and thus we affirm.

## FACTS

On July 8, 2002, defendants Wyatt and Smith, members of Wild Rockies Earth First!, ascended and occupied separate elevated platforms in two trees as part of a "tree-sitting" protest in the Bitterroot National Forest in Montana. Smith's platform was forty-five feet up in a tree, and Wyatt's platform was eighty to ninety feet up in a tree. Defendants occupied the platforms for several weeks to protest logging. The protest site was on National Forest Service land.

The protest site had earlier been designated as (1) a proposed logging helicopter landing site, and (2) an emergency medical helicopter landing site. At the time of the protest, however, the site could not yet be used for logging helicopters; safety standards required an expanded site, which in turn

---

[1]We decide defendants' remaining contentions by memorandum disposition filed concurrently with this opinion.

required the removal of about five trees.[2] A "natural opening" existed at the site, however, that would allow emergency medical helicopters, or other helicopters, to land (*e.g.*, if the helicopters suffered engine failure).

A blue climbing rope was strung between the defendants' platforms, and four yellow polypropylene ropes were strung from the trees. The yellow ropes were not suitable for climbing. The ropes were tied within reach of the platforms occupied by defendants. The ropes were repositioned during the time defendants occupied their respective platforms, although the testimony did not identify by whom.

Donald Polanski, a U.S. Forest Service law enforcement officer, testified the purpose of the yellow ropes was to interfere with helicopters operating at the site, and thus prevented logging activity there. Bret Daugherty, a forester with Carson Helicopters, testified the use of the ropes interfered with logging activities because the landing site could not be used. Specifically, the yellow ropes would interfere with logging helicopters because the 200-foot line used by the helicopters could entangle with the yellow ropes. The yellow ropes could also entangle with a helicopter's rotors, air intake, or fuselage, and thus cause a crash.

Both defendants stated that when they volunteered to participate in the tree sit, they knew the protest site was chosen to prevent helicopters from landing. They knew the purpose of the lines and wires was to interfere with helicopter operations at the site, knew that their presence in the trees by itself would hinder helicopter landings in the protest area, and were in a position to assert control over the yellow ropes. Further, there was evidence the ropes were tied to the trees occupied

---

[2]Logging helicopters attach a 200-foot line to logs and then deposit the logs into the landing site. The logging helicopter does not actually land at the site, but instead lowers the log where it is grasped by loggers working on the ground.

by defendants, within reach of defendants (themselves four to nine stories above the ground), and that the ropes were adjusted during the time defendants were stationed in their respective trees.

Wyatt eventually descended from his platform on July 29, 2002, but Smith remained in the tree until August 6, 2002, when the U.S. Forest Service removed her from her platform. The government charged defendants with four counts; only Count 1 is relevant to this opinion. Count 1 alleged defendants, "with the intent to obstruct or harass the harvesting of timber, used, or aided and abetted the use of, a hazardous or injurious device capable of causing bodily injury or damage to property, to wit: lines or wires, on Federal land, in violation of 18 U.S.C. § 1864 and 18 U.S.C. § 2." After a consolidated trial, the jury returned a guilty verdict on Count 1. Defendants timely appealed.

## DISCUSSION

Defendants contend 18 U.S.C. § 1864(a) is unconstitutionally vague as applied here because the statute "does not supply adequate notice that it is a crime to hang unmodified and highly visible ropes between trees" because "unmodified and highly visible ropes" do not fall within the statute's definition of a "hazardous or injurious device." We review *de novo* whether a statute is unconstitutionally vague. *United States v. Rodriguez*, 360 F.3d 949, 953 (9th Cir. 2004).

[1] In an as-applied challenge, a statute is void for vagueness (and thus unconstitutional under due process) if the statute "(1) does not define the conduct it prohibits with sufficient definiteness and (2) does not establish minimal guidelines to govern law enforcement." *Id.* at 953; *see United States v. Hockings*, 129 F.3d 1069, 1072 (9th Cir. 1997) (a criminal statute "cannot be so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.") (internal quotation marks omitted). As a corol-

lary to the vagueness doctrine, where the statute is ambiguous, "the rule of lenity must be applied to restrict criminal statutes to conduct clearly covered by those statutes." *Hockings*, 129 F.3d at 1072.

**[2]** In determining whether 18 U.S.C. § 1864(a) provided fair warning to defendants that it is a crime to hang "unmodified and highly visible ropes between trees" over a proposed helicopter landing site, we first look to the statute. 18 U.S.C. § 1864(a) provides:

> Whoever— (1) with the intent to violate the Controlled Substances Act, (2) with the intent to obstruct or harass the harvesting of timber, or (3) with reckless disregard to the risk that another person will be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk, uses a hazardous or injurious device on Federal land, . . . without the consent of the United States shall be punished under subsection (b).

**[3]** Only subsection (2) is at issue here. The statute defines "hazardous or injurious device" generally as "a device, which when assembled or placed, is capable of causing bodily injury, or damage to property, by the action of any person making contact with such device subsequent to the assembly or placement." 18 U.S.C. § 1864(d)(3). The definition of "hazardous or injurious device" also includes "sharpened stakes, *lines or wires*, lines or wires with hooks attached," and others. 18 U.S.C. § 1864(d)(3) (emphasis added).[3]

---

[3]The full definition of "hazardous or injurious device" reads: "a device, which when assembled or placed, is capable of causing bodily injury, or damage to property, by the action of any person making contact with such device subsequent to the assembly or placement. Such term includes guns attached to trip wires or other triggering mechanisms, ammunition attached to trip wires or other triggering mechanisms, or explosive devices attached to trip wires or other triggering mechanisms, sharpened stakes,

**[4]** For several reasons, section 1864(a) provides fair warning to persons of common intelligence that it is a crime to hang ropes above a helicopter landing site with the intent to obstruct or harass the harvesting of timber. *See Hockings*, 129 F.3d at 1072. First, unmodified and visible ropes strung above a helicopter landing site meet the general definition of a "hazardous or injurious device": when "assembled or placed," (*i.e.*, strung above the landing site), the ropes are "capable of causing bodily injury, or damage to property, by the action of any person making contact with such device subsequent to the assembly or placement" (*i.e.*, if the helicopter should land upon or become entangled in the ropes, it is likely to crash).

**[5]** Second, the definition of a "hazardous or injurious device" includes "sharpened stakes, lines or wires, lines or wires with hooks attached," and others. 18 U.S.C. § 1864(d)(3). The term "lines" is generally defined as "[a] rope, cord, [or] string." *Oxford English Dictionary* (2d ed. 1989). Thus, the yellow ropes fall with the "lines or wires" example.

**[6]** Third, the examples listed in the "hazardous and injurious device" definition readily show Congress' intent was to prevent interference with logging activities by the use of devices that might cause "bodily injury" or "damage to property." For example, the definition of "hazardous or injurious device" includes *inter alia* "tree spiking devices." 18 U.S.C. § 1864(d)(3). Legislative history also supports this conclusion. Senator McClure stated 18 U.S.C. § 1864 was intended to stop ecoterrorists from using "dangerous and deadly" methods to further their goals. 134 Cong. Rec. S16,064-65 (daily

lines or wires, lines or wires with hooks attached, nails placed so that the sharpened ends are positioned in an upright manner, or tree spiking devices including spikes, nails, or other objects hammered, driven, fastened, or otherwise placed into or on any timber, whether or not severed from the stump." 18 U.S.C. § 1864(d)(3).

ed. Oct. 14, 1988). He detailed some of the hazardous "tools of the ecoterrorist's trade," including punji sticks—steel bars with sharpened nails that can injure unsuspecting hikers—and tree spikes—spikes driven into trees that shatter saw blades into dangerous shrapnel. *Id.* It is clear Congress intended this statute to prevent the use of those and other devices that are hazardous and injurious to logging activities.

**[7]** In determining whether a statute is void for vagueness, we also consider whether the statute defines the offense "in such a manner that does not encourage arbitrary and discriminatory enforcement." *Kolendar v. Lawson*, 461 U.S. 352, 357 (1983). A scienter requirement can help a law escape a vagueness problem. *Posters 'N Things, Ltd. v. United States*, 511 U.S. 513, 526 (1994). Section 1864 contains just such a scienter requirement: it does not simply prohibit the use of a "hazardous or injurious device," but requires a defendant to use the device "with the intent to obstruct or harass the harvesting of timber." *See* 18 U.S.C. § 1864(a)(2). The intent requirement thus limits the discretion of law enforcement and mitigates any perceived vagueness of 18 U.S.C. § 1864.

Defendants misconstrue section 1864(a) by arguing the statute does not provide sufficient notice because "unmodified and highly visible ropes" are not included within the definition of a "hazardous and injurious device" in section 1864(d)(3). The exclusion of unmodified and visible ropes from this non-exhaustive list does not remove the ropes from the ambit of the definition of "hazardous and injurious device." As noted, the definition begins with a general definition (which, in any event, would encompass the yellow ropes) and then provides a list of devices "include[d]" under the definition. The use of the word "includes" suggests the list is non-exhaustive rather than exclusive. *See Hockings*, 129 F.3d at 1071; *see also Federal Land Bank v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle.").

Defendants also argue that in the "hazardous or injurious device" definition, the word "sharpened" modifies "stakes" *and* "lines or wires." Thus, because the ropes here were not "sharpened," they do not fall within the definition. We disagree. The error of defendants' argument becomes clear when the phrase "sharpened stakes, lines or wires, lines or wires with hooks attached" from 18 U.S.C. § 1864(d)(3) is compared with 21 U.S.C. § 841(d)(1). There, Congress provided that "[a]ny person who assembles, maintains, places, or causes to be placed a boobytrap on Federal property where a controlled substance is being manufactured, distributed, or dispensed shall be sentenced to a term of imprisonment . . . ." 21 U.S.C. § 841(d)(1). That statute defines "boobytrap" as "any concealed or camouflaged device designed to cause bodily injury when triggered by any action of any unsuspecting person making contact with the device. Such term includes guns, ammunition, or explosive devices attached to trip wires or other triggering mechanisms, *sharpened stakes, and lines or wires with hooks attached.*" 21 U.S.C. § 841(d)(3) (emphasis added). Notably, the unmodified term "lines or wires" is missing from that statute, which suggests Congress did not intend in 18 U.S.C. § 1864(d)(3) to modify the term "lines and wires" with the word "sharpened."

**[8]** Accordingly, we hold that 18 U.S.C. § 1864(a) provides fair warning to a person of common intelligence that it is a crime to hang ropes over a helicopter landing site with the intent to obstruct or harass the harvesting of timber. The statute is thus not unconstitutionally void for vagueness as applied here.

**[9]** For the same reasons, the rule of lenity is inapplicable here. "Under the rule of lenity, when a criminal statute is ambiguous, we interpret the statute in favor of the defendant. However, it applies only when there is grievous ambiguity or uncertainty in the statute and when, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended." *United States v. Phil-*

*lips*, 367 F.3d 846, 857 n.39 (9th Cir. 2004) (internal alterations, citations, and quotation marks omitted). Although 18 U.S.C. § 1864(d)(3) generally focuses upon concealed hazardous or injurious devices, such as tree spikes or trip wires, the statute is not ambiguous as applied because it is clear how the yellow ropes could be hazardous or injurious to a helicopter should a helicopter come into contact with the ropes.

**AFFIRMED.**