_____

No. 95-1779
_____

United States of America,              *
                                       *
          Appellee,                    *   Appeal from the United States
                                       *   District Court for the
     v.                                *   Southern District of Iowa.
                                       *
Lana Christine Acty,                   *
also known as Chris Acty,              *
                                       *
          Appellant.                   *

_____

              Submitted:  November 14, 1995

                 Filed:  March 7, 1996
_____

Before BEAM, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

BEAM, Circuit Judge.


     Lana Christine Acty (Acty) appeals the district court's[1] denial of
her motion to vacate, set aside, or correct her sentence pursuant to 28
U.S.C. § 2255.  Acty contends she was denied effective assistance of
counsel due to her attorneys' conflicts of interest and their adoption of
an unreasonable defense to the charges against her.  We affirm.


I.    BACKGROUND


     In 1977, Acty and her husband (now former husband), George Michael
Moore (Moore), formed "Posters `N' Things, Ltd." (Posters), an Iowa
corporation consisting of three component businesses.  Subsequently, law
enforcement officials began receiving complaints

_____

     [1]The Honorable Charles R. Wolle, United States District Court
Judge for the Southern District of Iowa.

that one of these businesses, a merchandise store, was selling drug paraphernalia.  Authorities initiated an investigation, and on March 28, 1990, conducted a search of the merchandise store and of the residence of Acty and Moore.  In the raid, officials seized various items of merchandise and several volumes of financial records related to the business.

The following day, Acty and Moore met with attorney Lawrence Scalise (Scalise) in his Des Moines, Iowa, office.  Scalise agreed to represent Acty, Moore, and Posters on any criminal or civil charges brought against them.  Scalise did not, however, receive a retainer fee from either Acty or Moore at this meeting.

Shortly after this initial meeting, Acty and Moore arranged another appointment with Scalise, this time in Las Vegas, Nevada.  The two arranged for Robert Vaughn (Vaughn), an attorney and Executive Director of the American Pipe and Tobacco Council, to attend this meeting.  Acty was a member of the American Pipe and Tobacco Council, and Vaughn had regularly advised Acty regarding the various drug paraphernalia laws applicable to the operation of Posters.  Vaughn acted as a consultant to Acty and Moore during the Las Vegas meeting.  It was at this meeting that Scalise received a retainer for his services from Acty and Moore.

On May 16, 1990, Acty, Moore, and Posters were formally indicted on various offenses related to the sale of drug paraphernalia.[2]  In the months following the indictment, Acty and Moore continued to meet with Scalise and, later, also with Scalise's partner, John Sandre (Sandre).  During this time, Acty and Moore experienced intermittent periods of marital discord which would occasionally come to the attention of their lawyers. Nevertheless, Scalise and Sandre continued to represent all three

---

[2]Acty was named in nine counts in the indictment, while Moore was named in six of the counts charged.

defendants until November 1990.  At that time, Acty sought alternative counsel in Vaughn.

At a joint jury trial held in December 1990, Vaughn appeared on Acty's behalf, Scalise represented Moore, and Sandre served as counsel for Posters.  The attorneys divided some of the tasks of trial preparation and presentation, however, with each attorney accepting primary responsibility for particular charges.  At the conclusion of trial, Acty was convicted of each of the nine counts charged against her and was sentenced to 108 months in prison.  Acty's conviction was ultimately affirmed in Posters 'N' Things, Ltd. v. United States, 114 S. Ct. 1747 (1994).

On July 22, 1994, Acty filed a motion for postconviction relief, claiming she was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution.  The district court denied the requested relief, and Acty appeals.  Acty argues that she received ineffective assistance of counsel because her attorneys labored under a conflict of interest due to their dual representation of both Acty and Moore.  Acty further alleges that her first attorney's reliance on an "advice of counsel" defense to the charges against her constituted ineffective assistance of counsel.

## II.  DISCUSSION

### A.   Conflict of Interest

The Sixth Amendment right to counsel embraces the right to representation that is free from conflicts of interest or divided loyalties.  See, e.g., Dawan v. Lockhart, 31 F.3d 718, 720-21 (8th Cir. 1994) (subsequent history omitted).  Conflicts may arise when an attorney simultaneously represents clients with differing interests.  Salam v. Lockhart, 874 F.2d 525, 527 (8th Cir.), cert. denied, 493 U.S. 898 (1989).  Nevertheless, joint representation of

codefendants by a single attorney is not per se violative of a defendant's right to effective assistance of counsel. Dokes v. Lockhart, 992 F.2d 833, 836 (8th Cir. 1993), cert. denied, 115 S. Ct. 437 (1994). Instead, in order to establish a constitutional violation due to conflict of interest, a defendant who fails to make a timely objection to her counsel must demonstrate that "an actual conflict of interest adversely affected [her] lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). Until a defendant shows that her counsel "actively represented conflicting interests, [she] has not established the constitutional predicate for [her] claim of ineffective assistance." Id.[3] at 350.

In determining whether a defendant has satisfied her burden under Cuyler, we employ two separate standards of review. We engage in a de novo review of ineffective assistance claims, which present mixed questions of law and fact, but we review the district court's underlying findings of historical fact for clear error. Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994) (subsequent history omitted).

---

[3]Under Cuyler, the mere potential for a conflict is insufficient to demonstrate a violation of a defendant's Sixth Amendment rights. Cuyler, 446 U.S. at 350. A potential conflict of interest may, however, form the basis of an ineffective assistance of counsel claim under the two-pronged test of Strickland v. Washington, 466 U.S. 668 (1984). See Pool v. Armontrout, 852 F.2d 372, 375 (8th Cir. 1988), cert. denied, 489 U.S. 1023 (1989). ("Absent an actual conflict of interest, Pool must establish that his counsel was ineffective under the two-pronged Strickland test."). A defendant asserting a Strickland claim of ineffective assistance due to a potential conflict would receive relief only "by showing both that (1) [her] attorney had a potential conflict of interest and (2) the potential conflict prejudiced [her] defense." Stoia v. United States, 22 F.3d 766, 770 (7th Cir. 1994). In this case, Acty has elected to proceed only under Cuyler, and therefore we do not consider any alternative Strickland claim.

-4-

## 1. Pretrial Representation

Acty contends that her attorneys had an actual conflict of interest at various stages in the criminal proceedings against her. Initially, Acty argues that from the outset of Scalise's representation of Acty and Moore, Moore began to minimize his own role in the operation of the merchandise store and to shift blame to Acty. Acty asserts that this representation, along with the couple's marital difficulties, gave rise to competing interests between the two defendants. According to Acty, Scalise's continued representation of both defendants in the face of this conflict compromised Acty's interests during the preparatory stages of the criminal proceedings, particularly during preliminary plea discussions with the government.

We have recognized that where different defenses are offered by two codefendants, and particularly "where one defendant attempts to exonerate himself by pointing the finger of guilt at codefendants," a conflict of interest can arise. Parker v. Parratt, 662 F.2d 479, 484 (8th Cir. 1981), cert. denied, 459 U.S. 846 (1982). We disagree, however, that an actual conflict of interest existed during the pretrial stages of this case.

The district court found that Acty and Moore acted as a team during the beginning phase of the proceedings against them. The two were unified in their defense throughout the early pretrial stages, each declaring that they lacked the intent to sell drug paraphernalia, believing the items in their store would be used for legitimate purposes. While it is evident the couple was experiencing marital difficulties at that time, nothing in the record indicates that the marital problems were related to disagreements over either party's responsibility for the operation of the store or over trial strategy. Moreover, both Scalise and Sandre testified at the hearing on Acty's section 2255 motion that they did not believe a conflict of interest existed between the two

codefendants during the early stages of the case. The district court properly credited this testimony, recognizing that "[a]n `attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists . . . .'" Holloway v. Arkansas, 435 U.S. 475, 485 (1978), (quoting State v. Davis, 514 P.2d 1025, 1027 (Ariz. 1973)). Given these facts, we fail to see an actual conflict during this period.

A potential conflict did eventually begin to develop as the trial approached. In approximately November 1990, Moore began to minimize his role in the operation of the merchandise store. This potential conflict was promptly resolved by Scalise and Sandre, however, when they immediately informed Acty that they would no longer be able to represent both Acty and Moore and advised her to seek alternative counsel. We are satisfied that these actions adequately addressed the developing tensions between the codefendants before an actual conflict could affect the representation.

Assuming, for the sake of argument, that Acty had demonstrated an actual conflict, we are convinced that the conflict of interest did not have an adverse effect on the performance of Acty's attorneys. Acty contends that the conflict stifled the amount of information that Scalise and Sandre imparted to her regarding her potential punishment under the sentencing guidelines. She also argues that the conflict affected the aggressiveness with which her attorneys pursued potential plea agreements on her behalf. After carefully reviewing the record, we find Acty's assertions to be without merit. First, the district court found that Scalise did indeed explain the sentencing guidelines to Acty, a finding adequately supported by Scalise's correspondence with the government regarding sentencing calculations. Second, nothing in the record indicates that Acty was excluded from the plea negotiation process. Some of the preliminary plea correspondence

between Scalise and the government was written with specific reference to Moore, while other correspondence addressed both defendants. None of the preliminary negotiations, however, were ever concealed from Acty. To the contrary, the record supports the district court's finding that each of the preliminary plea proposals was discussed with both defendants, and that both rejected the proposals because they would involve prison sentences. On this record, Acty has failed to show how her attorneys would have performed differently had they not been affected by the alleged conflict of interest.

In short, Acty has not satisfied either prong of the <u>Cuyler</u> test. Therefore, we find that Acty was not denied her Sixth Amendment right to effective assistance of counsel during the pretrial stages of her prosecution.

### 2. Representation of Acty at Trial

Acty also contends that an actual conflict of interest infected Vaughn's representation during the trial of her case. According to Acty, a conflict of interest was created by Vaughn's contact with Moore[4] and by Vaughn's agreement with Scalise and Sandre to divide work on the issues in the case. This conflict, Acty argues, colored Vaughn's advice to Acty that she not testify in her own defense at trial.

Nothing in the record supports Acty's assertions that Vaughn's advice against testifying was the result of an actual conflict of interest. The district court found that Vaughn had secured the suppression of evidence prejudicial to Acty's case, and that he advised Acty not to testify out of concern that her testimony would

---

[4]Throughout the early stages of the criminal proceedings, Moore had sent letters to Vaughn asking questions regarding the status of the defense. One letter reached Vaughn after Vaughn entered his appearance as attorney for Acty.

open the door to presentation of this evidence on cross-examination. The court below also found that Vaughn believed Acty's testimony would be of little benefit to her defense. These findings are not clearly erroneous and in fact are amply supported in the record.

Neither Moore's letters to Vaughn nor Vaughn's cooperation with Scalise and Sandre compels the conclusion that Vaughn's advice was motivated by an actual conflict. Moore's communications with Vaughn were one-sided, and simply fail to establish that Vaughn's loyalties were in any way divided between Acty and Moore. While the division of labor between the three attorneys certainly required a degree of cooperation between them, communication by separate counsel in a joint trial does not necessarily create an actual conflict of interest. Nor is there any evidence that this particular agreement between the attorneys created a conflict for Vaughn.[5] Accordingly, we find that Vaughn's trial representation was not clouded by an actual conflict of interest, and that Acty is not entitled to relief under Cuyler.

### B. "Advice of Counsel" Defense

As her second ground for relief from her conviction, Acty contends that Scalise provided ineffective assistance of counsel by pursuing an "advice of counsel" defense to the drug paraphernalia charges alleged in the indictment. Scalise proposed to develop the defense at trial by offering evidence that Acty relied heavily on Vaughn's advice regarding the scope of the drug paraphernalia laws

---

[5]The agreement between the attorneys did not, for example, include a provision that the attorneys refrain from pursuing a line of questioning if it would be detrimental to a codefendant. To the contrary, the trial transcript indicates that each attorney was free to, and indeed did, take the opportunity to ask questions and make objections on behalf of his client at any time during the trial regardless of whether that attorney had primary responsibility for the particular charge at issue.

applicable to her business.  In fact, prior to Acty's decision to retain Vaughn as trial counsel, Scalise had planned to call Vaughn as a witness to attest to his frequent advice to Acty during the operation of her business.

According to Acty, Scalise's error in relying on the "advice of counsel" defense was twofold.  First, the defense was faulty because Vaughn advised Acty only in his capacity as Executive Director of the American Pipe and Tobacco Council and not as her retained attorney.  Second, the defense was designed to establish Acty's lack of subjective intent to violate the drug paraphernalia statute, a factor which became irrelevant when the trial judge ruled that the statute required only objective scienter.[6]  Acty asserts that Scalise's focus on this defense, to the exclusion of others, rendered his representation constitutionally ineffective.

To succeed in this ineffective assistance claim, Acty must establish: "first, [her] counsel's assistance fell below an objective standard of reasonableness in that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would use under like circumstances; and second, that the deficient performance prejudiced [her] defense."  Battle, 19 F.3d at 1554 (citing Strickland, 466 U.S. at 687).  In Strickland, the Supreme Court stated that in order to establish prejudice, a defendant "must show that there is a reasonable

---

[6]At the time of the trial, the question of whether the statute under which Acty was charged contained a subjective scienter requirement or an objective scienter requirement was widely debated.  See United States v. Posters `N' Things, Ltd., 969 F.2d 652, 656-57 (8th Cir. 1992), aff'd, 114 S. Ct. 1747 (1994).  On November 8, 1990, approximately one month before trial, the trial court entered an order in Acty's case ordering that the prosecution would be required to establish only objective scienter on the part of Acty and Moore.  On direct appeal, this court held that the statute contained an objective scienter requirement.  Id. at 657-58.  The United States Supreme Court ultimately adopted this determination.

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  More recently in Lockhart v. Fretwell, 113 S. Ct. 838 (1993), however, the Supreme Court admonished that the prejudice prong encompasses more than mere outcome determination.  Rather, the ultimate focus of the question of prejudice is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  Id. at 844.

Under these standards, we find that Acty has failed to demonstrate Scalise's use of the "advice of counsel" defense constituted ineffective assistance of counsel.  The defense was a professionally reasonable one at the time of trial in light of the split in authorities over the statute's intent requirement.  Furthermore, although the trial court made a pretrial ruling that the prosecution was required to prove only objective intent, the court nevertheless explicitly refused to foreclose use of the "advice of counsel" defense by the defendants. As in any ineffective assistance claim, we must resist the temptation to engage in a hindsight evaluation of a defense attorney's tactics.  See Strickland, 466 U.S. at 689. Scalise's strategy in developing the "advice of counsel" defense was a reasonable strategy developed after professionally adequate research of the law as it stood at the time of Acty's case.

Even if we concluded that Scalise's decision to develop the "advice of counsel" defense was deficient, we would still reject Acty's claim due to the lack of evidence that prejudice resulted from Scalise's decision. Acty argues that if Scalise had not focused on the "advice of counsel" defense he would have cultivated other defenses and the outcome of her case would have been different.  This assertion is not only entirely speculative, it is completely unsupported by the record.  The record reveals that the government had a solid case against Acty to which few defenses could be mounted.  Because there was never a question that Acty

-10-

sold the items which were eventually found to be drug paraphernalia, Acty's attorneys necessarily grounded her defense on her knowledge of the various uses of the items and her intent in selling them. Although Acty believes her best defense would have been to shift blame to Moore, such a strategy would have yielded her little in this case. Acty has suggested no other defenses, and we can think of none, which would have changed the outcome of her proceedings. Thus, Acty has not met her burden of showing that, but for Scalise's strategic choices, the result of her proceedings would have been different. Nor has she demonstrated that Scalise's strategy rendered the proceedings fundamentally unfair or unreliable. Accordingly, Acty has failed to establish that Scalise's "advice of counsel" defense violated her Sixth Amendment right to effective assistance of counsel.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-