NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0438n.06
Filed: June 21, 2007

No. 06-6170

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| RICHARD HAMBLEN, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |

**BEFORE:**   **GIBBONS and COOK, Circuit Judges; and CLELAND, District Judge.**[*]

**CLELAND, District Judge.**  Defendant-Appellant Richard Hamblen appeals his conviction

for possessing machineguns[1] in violation of 18 U.S.C. § 922(o) and 26 U.S.C. § 5861(d).  He

contends that these statutes are unconstitutional as applied to him because they (1) violate his Second

Amendment right to keep and bear arms as a member of the Tennessee State Guard ("State Guard"),

which, he says, constitutes a "well-regulated militia," and (2) are unconstitutionally vague as applied

to him.  For the reasons stated below, we reject both arguments and affirm.

**I.**

_____

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of
Michigan, sitting by designation.

[1]The term "machinegun" will be used to denote weapons that fit within the statutory
definition of "machinegun" set forth at 26 U.S.C. § 5845(b) for purposes of 18 U.S.C. § 922(o). The
parties have stipulated that each of the nine weapons Hamblen was convicted of possessing
constitutes a machinegun.

Defendant-Appellant Richard Hamblen enlisted in the Tennessee State Guard in 1999. The all-volunteer State Guard is one of four organizations within the Tennessee Department of the Military[2] and is authorized by Tennessee statute. In its current incarnation, the State Guard has existed since the 1980s and has an annual budget of approximately $50,000. The State Guard's mission is to augment the Tennessee National Guard, and it typically performs ceremonial duties. State Guard training emphasizes responding to natural or man-made disasters.

Under Tennessee statute, the State Guard is authorized to become an armed force if the State Guard is activated by the Governor of Tennessee. The State Guard has not recently been "activated,"[3] although it has been called into service.[4] The State Guard is to serve as an armed force only as a last resort. If "activated," the governor of Tennessee is authorized to obtain weapons needed to equip the State Guard. Tenn. Code Ann. § 58-1-405.

As volunteers in an honored traditional form of service to the State of Tennessee, all State Guard members are responsible for purchasing their own uniforms and other equipment. State Guard members are not issued weapons. The Guard is, however, provided with twenty-one M16 rifles and ammunition for use during a three-day annual training session conducted by a State Guard commander. These M16s, capable by design of being operated in a fully automatic mode, have been

[2]The other three organizations are the Army National Guard, the Air National Guard and the Tennessee Emergency Management Agency.

[3]In a prior incarnation, the State Guard was used on occasion to perform its duties in an armed capacity.

[4]After September 11, 2001, the State Guard was utilized to perform unarmed security functions at the United States Naval Air Base in Millington, Tennessee.

disabled such that they do not function in that mode and the user must pull the trigger once for each shot fired. State Guard policy prohibits members from either keeping State Guard weapons in their possession for possible emergency or other use or carrying their own individual weapons in the course of their duty. If a State Guard member were to carry a personal weapon while serving in his official State Guard capacity he would be subject to a court-martial.

According to Hamblen's trial testimony, he believed that the State Guard could be activated and used as an armed force after September 11, 2001. Because the State Guard had only a few weapons and over a thousand members, Hamblen claimed to have concluded that the State Guard did not have the resources to perform its duties as an armed force and began looking for a means to better equip the State Guard. Hamblen was aware that State Guard members were specifically instructed after September 11, 2001 not to carry weapons in connection with their duties. Hamblen purchased parts kits with his own funds and used his metalworking expertise to build the machineguns himself. He built a walk-in safe at his place of business to store the machineguns and added security to the building. On at least one occasion, Hamblen had his unit train with his 1919 A4 machinegun. At the time, Hamblen knew that this training exercise violated State Guard policy.[5]

Hamblen never discussed his machinegun possession with his superiors at the State Guard, and no law enforcement officer or State Guard superior knew of Hamblen's machinegun possession. Hamblen admitted that no one at the State Guard ever ordered or even authorized him to obtain any weapons for the State Guard. Hamblen also admitted that he knew at the time that his possession

---

[5]Lower-ranking officials such as Hamblen are not authorized by the State Guard to conduct any firearms training.

of the machineguns violated the statutes under which he was convicted. Hamblen testified that he believed he was authorized to possess the machineguns because the Constitution provides an exception to gun control laws and gives people the right to possess militarily useful weapons for an armed force like the State Guard.[6]

In March 2004, Hamlen took steps to make his possession of the machineguns legal by obtaining a "Type 1" federal firearms license, which permitted him to sell pistols, revolvers, shotguns and rifles. Hamblen, however, had not paid a special occupation tax that would enable him to deal in National Firearms Act weapons, such as machineguns. Furthermore, the parties stipulated that none of the nine machineguns were ever registered to Hamblen in the National Firearms Registration and Transfer Record.

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") began an investigation in early 2004 after receiving information that Hamblen was illegally possessing machineguns. On April 22, 2004, Eric Kehn, an ATF agent, and Greg Franklin, an FBI agent, spoke with Hamblen at his place of business. The agents asked Hamblen whether he possessed any automatic weapons, and he denied such possession. Hamblen admitted at trial that he denied possessing any automatic weapons because he "had something to hide" and "panicked." Hamblen consented to a search of the premises. After the agents again asked Hamblen whether he possessed automatic weapons, Hamblen admitted that he possessed some and directed the agents to a walk-in safe at the back of the building.

---

[6]While Hamblen initially testified that the Statue Guard is required to be an armed force, Hamblen later admitted that the Tennessee Code authorizes, not requires, the State Guard to be an armed force.

The safe contained nine machineguns: (1) three Model 1919 A6 machineguns; (2) four Model G3 machineguns and (3) two Model MG-42 machineguns. Hamblen told the agents that he had made the machineguns himself from parts kits that he had purchased. At trial, the agents testified that when they asked Hamblen why he assembled and kept these machineguns, Hamblen explained that he was a World War II re-enactor and a collector, and he did not mention either the Second Amendment or the Tennessee State Guard. While Hamblen admitted at trial that he told the agents he was a World War II re-enactor and collector, Hamblen contended that he also told them that he was keeping the machineguns in case they were needed by the State Guard in an emergency. Agent Franklin testified that the first time he heard Hamblen's Second Amendment claim was eighteen months later.

On December 14, 2005, Hamblen was charged in a two-count indictment for unlawfully possessing machineguns in violation of 18 U.S.C. § 922(o) and possessing unregistered firearms in violation of 26 U.S.C. § 5861(d). The case proceeded to trial and, on May 31, 2006, the jury returned a verdict of guilty on both counts of the indictment. After return of the verdict, the district court denied Hamblen's motion for judgment of acquittal based on the allegedly unconstitutional infringement of Hamblen's Second Amendment rights that would result from the application of 18 U.S.C. § 922(o). At Hamblen's August 25, 2006 sentencing hearing, the district court sentenced Hamblen to a term of imprisonment of fifteen months for each count, to run concurrently, followed by a two-year period of supervised release. Hamblen filed a timely notice of appeal.

## II.

This court reviews a district court's ruling on the constitutionality of a federal statute *de novo.*

*United States v. Faasse*, 265 F.3d 475, 480 (6th Cir. 2001) (citing *United States v. Napier*, 233 F.3d

394, 397 (6th Cir. 2000)). "In reviewing the denial of a motion for acquittal, 'the relevant question

is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"

*United States v. Landham*, 251 F.3d 1072, 1083 (6th Cir. 2001) (emphasis omitted) (quoting *Jackson*

*v. Virginia*, 443 U.S. 307, 319 (1979)).

**III.**

Hamblen appeals his conviction for unlawfully possessing machineguns under 18 U.S.C. §

922(o), claiming that this statute is unconstitutional as applied to him because it violates his Second

Amendment right to keep and bear arms. The Second Amendment of the United States Constitution

states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the

people to keep and bear Arms, shall not be infringed." Hamblen contends that he can establish a

valid Second Amendment defense because he satisfies the following four-part test established by the

Tenth Circuit:

> As a threshold matter, [a defendant making a Second Amendment claim] must show
> that (1) he is part of a state militia; (2) the militia, and his participation therein, is
> "well regulated" by the state; (3) machineguns are used by that militia; and (4) his
> possession of the machinegun was reasonably connected to his militia service.

*United States v. Haney*, 264 F.3d 1161, 1165 (10th Cir. 2001). Hamblen claims that he is a part of

the Tennessee State Guard, a well-regulated militia, and that the machineguns he possessed were

both of the type used by the State Guard and reasonably connected to his service in the State Guard. Accordingly, Hamblen submits that 18 U.S.C. § 922(o) is unconstitutional as applied to him because it violates his Second Amendment right to keep and bear arms.

Although the Sixth Circuit has not expressly adopted the *Haney* four-part test, this circuit has held that "the Second Amendment guarantees a collective rather than an individual right." *United States v. Warin*, 530 F.2d 103, 106 (6th Cir. 1976). Additionally, the Supreme Court has stated that a valid Second Amendment claim requires a defendant to establish that his possession or use of a weapon "has some reasonable relationship to the preservation or efficiency of a well regulated militia." *United States v. Miller*, 307 U.S. 174, 178 (1939). Thus, at a minimum, Hamblen must assert a collective right by satisfying *Miller*.[7]

Hamblen contends that his possession was reasonably related to his State Guard service because the State Guard could have been activated after September 11, 2001 and Hamblen's machineguns were necessary in light of the State Guard's limited equipment and resources.[8] In his brief, Hamblen also argues that even though he was never ordered to obtain weapons for the State

---

[7]Because it is clear that Hamblen cannot show that his machinegun possession has some reasonable relationship to the preservation or efficiency of the State Guard, we need not accept or reject the Tenth Circuit's test and refrain from deciding whether the State Guard is a well regulated militia under the Second Amendment.

[8]The government submits that it is unlikely that Hamblen's machinegun possession was truly motivated by his State Guard service because he allegedly failed to explain to the agents that the machineguns were for State Guard use and because Hamblen failed to inform any State Guard superior of his machinegun possession. For the reasons stated above, even if Hamblen subjectively intended to possess the machineguns for State Guard use, his possession was not reasonably related to the preservation or efficiency of the State Guard.

Guard, he was somehow authorized to do so by the Second Amendment and *Miller*.

We disagree. As stated above, the Second Amendment protects weapons possession or use only if it "has some reasonable relationship to the preservation or efficiency of a well regulated militia." *Miller*, 307 U.S. at 178. Hamblen has failed to show that his machinegun possession was reasonably related to the State Guard's preservation or efficiency. Hamblen points to the State Guard's meager budget and arms supply to show the need for him to possess machineguns for State Guard use. This argument is unavailing because Tennessee statute both allows for the activation of the State Guard as a military force and also provides the means to arm and equip that force. *See* Tenn. Code Ann. § 58-1-405. It is not reasonable to assume that the governor of Tennessee would use his statutory authority to activate the State Guard without also using his statutory authority to arm and equip the State Guard such that State Guard members would themselves need to acquire firearms, especially machineguns, to preserve the State Guard or its efficiency.

Furthermore, there are no facts to support the position that Hamblen's machinegun possession was authorized by the State Guard. Although Hamblen appears to claim that he was authorized to possess the machineguns by virtue of his State Guard membership alone, State Guard policy prohibited individual members from using their personal weapons in the course of their State Guard duties, and any violations would result in court-martial. Indeed, Hamblen agreed at trial that no one "from the State Guard at any time ever authorize[d him] in any way to possess any of the nine weapons." Hamblen also admitted that, even post-September 11, 2001, State Guard policy prohibited his behavior. Hamblen has thus failed to show how his individual decision to purchase machineguns based on his own perception of the State Guard's future activation and financial need

was reasonably related to the preservation or efficiency of the State Guard, whose own policies prohibited this very behavior.

Accordingly, we affirm the district court's denial of a motion for judgment of acquittal on Hamblen's Second Amendment claim.

**IV.**

Hamblen next contends that both 18 U.S.C. § 922(o) and 26 U.S.C. § 5861(d) are unconstitutionally vague as applied to him. He claims that 18 U.S.C. § 922(o) is unconstitutionally vague because (1) it provides an exception for machinegun possession that is "under the authority of" the United States or a State, but does not provide sufficient guidance as to what constitutes proper authority and (2) it allows for arbitrary enforcement. Hamblen also argues that 26 U.S.C. § 5861(d) is unconstitutionally vague because (1) it requires registration that would be impossible to obtain and (2) it allows for arbitrary enforcement.

The government objects to these claims because Hamblen did not raise them at the district court level. "This court is not compelled to hear, nor should it hear, an issue not presented to the district court unless reaching that issue serves an over-arching purpose beyond that of arriving at the correct result in an individual case." *Foster v. Barilow*, 6 F.3d 405, 408 (6th Cir. 1993). Hamblen asserts that the panel should consider this issue because it affects his substantial rights, addresses a matter of constitutional significance and is a matter of law that does not require further development of the factual record. Because Hamblen's as-applied constitutional vagueness challenge is by its nature a fact-specific individualized claim, *see Maynard v. Cartwright*, 486 U.S.

356, 361 (1988), Hamblen has not shown an over-arching purpose warranting review of his claims that are raised here for the first time.

Even if we were to review this issue on the merits, Hamblen has failed to show that these statutes are unconstitutionally vague as applied to him. Due process requires that a statute give notice of prohibited conduct such that a person of ordinary intelligence can conform his conduct to comply with the law. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." *Maynard*, 486 U.S. at 361 (citations omitted).

Hamblen contends that 18 U.S.C. § 922(o)(2)(A) is unconstitutionally vague, as applied, because it does not provide sufficient guidance for Hamblen to know if he was authorized to possess machineguns for State Guard use. Hamblen's claim fails for the reasons stated above. Hamblen's machinegun possession was admittedly against State Guard policy, and Hamblen himself testified that the State Guard did not authorize him to possess machineguns for State Guard use. Accordingly, we conclude that, under the facts of this case, a person of ordinary intelligence would have been placed on sufficient notice that Hamblen's conduct was prohibited under 18 U.S.C. § 922(o). Hamblen's claim that the vagueness inherent in 18 U.S.C. § 922(o) encourages arbitrary enforcement must fail for the same reasons.

Hamblen also claims that 26 U.S.C. § 5861(d) is unconstitutional as applied to him because it prohibits possession of an unregistered firearm when it would have been impossible for Hamblen to register his machineguns due to 18 U.S.C. § 922(o). Hamblen recognizes that this court has previously held that it is not a violation of due process to convict a defendant under § 5861(d) for

possessing unregistered machineguns that could not be registered under § 922(o). *See United States v. Bournes*, 339 F.3d 396, 399 (6th Cir. 2003). In *Bournes*, the court held that the defendant could have easily complied with both statutes "by electing not to possess the machine guns at issue in this case." *Id*. Hamblen attempts to distinguish *Bournes* by noting that it also found that the defendant's possession was unlawful under § 922(o), whereas here, Hamblen claims his possession was lawful under the Second Amendment. Since we rejected Hamblen's Second Amendment defense, however, there is no basis to distinguish *Bournes*. Accordingly, Hamblen's impossibility defense fails because, as in *Bournes*, Hamblen could have satisfied both statutes by refraining from possessing machineguns altogether.

Hamblen additionally argues that State Guard members who participated in live fire exercises using State Guard weapons during annual training would technically violate § 5861, which prohibits an individual from possessing a weapon that is not registered to them individually. Hamblen therefore argues that the statute creates the potential for arbitrary enforcement. Although requiring a penal statute to provide minimal guidelines to discourage arbitrary enforcement is "perhaps the most meaningful aspect of the vagueness doctrine," *Smith v. Goguen*, 415 U.S. 566, 574 (1974), we need not decide whether § 5861 creates the potential for arbitrary enforcement under that hypothetical. Because Hamblen was not prosecuted for possessing State Guard weapons during annual training, that scenario is simply not before the court and cannot constitute the basis for an as-applied constitutional vagueness challenge.

**V.**

For the foregoing reasons, we affirm the judgment of the district court.