NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0458n.06

No. 15-3356

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 11, 2016
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE SOUTHERN |
| ERIC A. SPICER, | ) DISTRICT OF OHIO |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

BEFORE: BATCHELDER and WHITE, Circuit Judges; LIPMAN, District Judge.[*]

**HELENE N. WHITE, Circuit Judge.** After a jury trial, Eric Spicer was convicted of

unlawful possession of a machine gun, in violation of 18 U.S.C. § 922(*o*), and possession of a

firearm not registered to him, in violation of 26 U.S.C. § 5861(d). Spicer appeals, challenging

the sufficiency of the evidence, the constitutionality of the statutes as applied to him, and the

adequacy of the jury instructions. We **AFFIRM** the § 922(*o*) conviction and **VACATE** the

§ 5861(d) conviction.

**I.**

Spicer's convictions arise out of his termination from the Green County, Ohio, sheriff's

office. Spicer joined the sheriff's office as a captain in 2004, and was promoted to major in

2012. The government presented evidence that in 2009, Spicer ordered a Heckler & Koch 416

("HK416") assault rifle from a firearms dealer, and paid for it with his own money. Because

---

[*] The Honorable Sheryl H. Lipman, United States District Judge for the Western District
of Tennessee, sitting by designation.

private possession of machine guns is restricted under federal law, the dealer required Spicer to confirm that the HK416 was for law-enforcement use. Spicer sent a confirmation under the sheriff's name, and imitated the sheriff's signature. The dealer then shipped the HK416 to Spicer, who registered the gun to the county; however, the HK416 was never entered into inventory. Spicer trained and tested with the HK416 on the department range, and qualified to use it. The sheriff, Gene Fischer, later testified that he did not know Spicer had obtained a machine gun.

Fischer placed Spicer on administrative leave on July 31, 2013, for reasons unrelated to this case. The following month, Spicer removed the HK416 from his office and brought it home. The sheriff's office terminated Spicer's employment on March 6, 2014, and sent two deputies to deliver the termination letter to Spicer at his residence. The deputies collected Spicer's handgun, badge, and other department property, but not the machine gun, which the deputies were unaware of at the time. The sheriff's office then sent Spicer a letter requiring him to return "all property issued" by March 13, 2014. Spicer did not return the machine gun.

After Spicer's employment was terminated, he exchanged several phone calls with Jon Schade, the police chief in nearby Jackson Township, about establishing a relationship that would allow Spicer to maintain his Ohio law-enforcement commission. While these discussions about a possible appointment were pending, Spicer sent Schade a text message: "If anybody asks, I'm sworn?" R. 61, Trial Tr., PID 544. Spicer also brought up the HK416, and asked Schade to contact Fischer about transferring the registration from Greene County to Jackson Township. Schade called Fischer to discuss Spicer, and to make Fischer aware that a firearm might need to be transferred.

Accounts of this conversation differed at trial. Fischer testified that the conversation was primarily about Spicer's qualifications for a law-enforcement position with Jackson Township, and that Schade "made a comment that there was something about a gun that would need to be transferred," and in response, Fischer "just said, 'Okay.' That was it." R. 61, Trial Tr., PID 567. Schade testified that Fischer "didn't act like it would be an issue, but he didn't say, 'Okay, I know about this specific gun' or 'We'll make it happen.'" *Id.* at PID 549. According to Schade, Fischer's response "was more of a 'We'll look into it,'" and Schade "figured there may be a follow-up conversation at some point." *Id.* at 555–56. Spicer testified that Schade later called him to describe the conversation with Fischer. According to Spicer:

> [Schade] said, "Hey, I talked to the sheriff, and, surprisingly, it went pretty well. I said, 'Hey, do you mind transferring it over to Greene County?' and he said, 'Okay.'"
>
> I said, "Really?"
>
> He said, "He said okay."
>
> . . . [T]he entire conversation I—it was clear to me that [Fischer] knew where the gun was, he knew it wasn't at his agency and that he was transferring it and it now was in the process. It was becoming Jackson Township's property.

R. 62, Trial Tr., PID 797.

After speaking with Schade, Fischer directed a detective to call the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to inquire about transferring a firearm registered to Greene County. At some point, the sheriff's office discovered that the HK416 had been registered to the county without being entered into inventory, and was not stored in the department's armory. ATF opened an investigation and learned that Spicer had acquired the HK416 by signing Fischer's name. On March 28, 2014, ATF executed a warrant at Spicer's home and secured the machine gun. Spicer was cooperative, but inaccurately suggested to ATF

agents that he had been commissioned as an officer in Jackson Township. Although Jackson Township had sent Spicer an application form, Spicer had not received a commission.

A grand jury indictment charged Spicer with one count of possession of a machine gun, in violation of § 922(*o*), one count of possession of an unregistered firearm, in violation of § 5861(d), and five counts related to Spicer's acquisition of the machine gun. The case proceeded to trial, and the jury found Spicer guilty of the § 922(*o*) and § 5861(d) counts, but not guilty of the other five counts. The district court imposed a sentence of five years of probation on each count, to run concurrently, a $1,800 fine and $200 in special assessments, and one hundred hours of community service.

## II.

Spicer appeals his convictions. The government joins Spicer in asking us to vacate the § 5861(d) conviction, and we grant the relief requested. We therefore consider only Spicer's three challenges to the § 922(*o*) conviction.

## A.

First, Spicer argues that the evidence was insufficient to support his § 922(*o*) conviction, and that the district court erroneously denied his motion to acquit on this ground. "In reviewing this challenge, we look at 'the evidence in the light most favorable to the prosecution' and ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Henry*, 797 F.3d 371, 376 (6th Cir. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Section 922(*o*) provides:

(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

(2) This subsection does not apply with respect to—

> (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency or political subdivision thereof.

18 U.S.C. § 922(*o*)(1)–(2)(A). Spicer argues that any rational jury would conclude that he possessed the HK416 "under the authority" of Greene County on the day ATF executed the search warrant. The government asserts that courts generally view subparagraph (2)(A)'s authority exception as an affirmative defense, rather than an element of the crime, but concedes that it did not raise this issue below. Further, the government appears to concede that a sufficiency challenge is measured against the instructed elements under these circumstances, and the district court instructed the jury that lack of authority is an element of § 922(*o*). *Cf. United States v. Houston*, 792 F.3d 663, 669–70 (6th Cir. 2015).

In any event, there is sufficient evidence to support Spicer's conviction, even if lack of authority is considered an element of § 922(*o*). The Greene County sheriff's office permitted only SWAT team members to have machine guns, and even SWAT team members were not permitted to take their machine guns home. Further, Spicer, who was never on the SWAT team, kept the machine gun at his home after his administrative leave began on July 31, 2013, after his termination on March 6, 2014, and after the March 13, 2014, deadline for returning department property. Regardless whether Spicer was authorized to have a machine gun while employed by Greene County, a rational jury could conclude based on the undisputed evidence of his continued possession after the deadline to return department property that Spicer did not possess the HK416 "under the authority" of Greene County on March 28, 2014, when ATF executed the warrant.

Spicer argues that Fischer delegated Greene County's authority to Spicer during the conversation Fischer had with Schade about transferring the firearm to Jackson Township.

However, Fischer testified that he did not know Spicer had a machine gun and did not agree to transfer the registration. Spicer asserts that Fischer's testimony was "false" and "not credible," but we must resolve credibility issues in favor of the verdict. *United States v. Collins*, 799 F.3d 554, 589 (6th Cir. 2015). Spicer also argues that, regardless, he had a reasonable belief that he possessed the HK416 under Greene County's authority. But Spicer asked for Schade's permission to say that he was sworn in Jackson Township, and told ATF agents that he had a commission. A reasonable jury could conclude Spicer knew he did not have Greene County's authority because he tried to convince the agents he had Jackson Township's authority.

**B.**

Next, Spicer argues § 922(*o*) is unconstitutionally vague as applied, an issue we review de novo. *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012). A criminal statute violates the Due Process Clause of the Fifth Amendment if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). A statute provides fair notice "where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). Further, a statute is impermissibly standardless if it "permit[s] 'a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (quoting *Smith v. Goguen*, 415 U.S. 556, 575 (1974)).

Under the facts of this case, an ordinary person would have been on notice that his conduct violated § 922(*o*) by the time ATF executed the warrant. Spicer's possession of the HK416 at his home was contrary to sheriff's office policy, *United States v. Hamblen*, 239 F. App'x 130, 136 (6th Cir. 2007), and even if it were not, a reasonable officer would know that

continued possession of the machine gun after the termination of the government employment under which authority the machine gun was held at least put him "at risk" of violating § 922(*o*). *Maynard*, 486 U.S. at 361. Further, an ordinary officer would be on notice that he must forfeit possession of a machine gun where, as here, the sheriff's department collected the officer's handgun and badge, and requested the return of all department property by a certain date. And, as discussed, the evidence suggests that Spicer had actual notice that he should not be in possession of the HK416.

Section 922(*o*) is also not so standardless as to invite "unpredictability and arbitrariness" as applied to a terminated officer under these circumstances. *Johnson*, 135 S. Ct. at 2558. Spicer suggests that enforcement against terminated officers is arbitrary because § 922(*o*) does not define a "clear moment" when a terminated officer must forfeit possession of a machine gun; ATF could theoretically arrest an officer for unlawful possession the moment he is terminated, or while a valid registration transfer is pending. However, the "theoretical possibility" that ATF will enforce § 922(*o*) against officers under these circumstances "is of no due process significance unless the possibility ripens into a prosecution." *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 527 (1994) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estate, Inc.*, 455 U.S. 489, 503–04 n.21 (1982)). These concerns are not implicated by the instant prosecution for continued possession twenty-two days after termination.

## C.

Lastly, Spicer challenges the jury instructions. Generally, we review a district court's choice of jury instructions for an abuse of discretion. We consider whether the instructions "adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision," and will reverse "only if the instructions, viewed as a

whole, were confusing, misleading, or prejudicial." *United States v. Taylor*, 800 F.3d 701, 709

(6th Cir. 2015) (quoting *United States v. Svoboda*, 633 F.3d 479, 483 (6th Cir. 2011)). However,

if an objection is not preserved, we review for plain error, and will reverse only if "taken as a

whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of

justice." *United States v. Ray*, 803 F.3d 244, 277–78 (6th Cir. 2015) (quoting *United States v.*

*Newsom*, 452 F.3d 593, 605 (6th Cir. 2006)).

The district court instructed the jury regarding § 922(*o*) that to convict it had to find that

Spicer was "not authorized to possess th[e] machine gun." R. 62, Trial Tr., PID 885. The court

defined "authorized":

> With respect to the term "authorize" as used in the third element, the law
> prohibits private individuals from possessing a machine gun. The only persons
> who are lawfully authorized to possess machine guns are federal or state agents,
> such as police officers, acting in an official capacity at the time of possession of
> the machine gun.
> If you find that Mr. Spicer was a government agent acting in an official
> capacity at the time he possessed the machine gun, or if you have reasonable
> doubt as to whether he was so authorized, then you must find him not guilty.

*Id.* at PID 886. As discussed, the government contends that state authority is properly viewed as

an affirmative defense, rather than an element of the crime, but concedes it did not raise this

issue in the district court.

Spicer argues that the district court's definition of "authorized" was misleading and

prejudicial.[1] According to Spicer, defining "authorized" as "acting in an official capacity"

---

[1]Spicer's proposed jury instructions used essentially the same definition. However, at the
charge conference, Spicer's counsel said he was "having trouble with" an official-capacity
definition because the "express language of the statute" allows that a state agency "could
designate and view someone with authority to possess." R. 59, Trial Tr., PID 473–77. The court
did not view the official-capacity definition as excluding a designation-of-authority theory, and
concluded: "I'm going to leave it where it is, and we can deal with it later." *Id.* at PID 478–79.
The next day, the court revisited the instructions and did not alter the definition of "authorized."

erroneously excludes possession under lawful delegation of authority to a terminated officer. However, the district court's instruction included state or federal "agents" among those who could lawfully possess a machine gun, and did not restrict that category to police officers, although giving that as an example. Thus, the instruction did not prevent Spicer from arguing that he did not violate § 922(*o*) under his version of the facts: Fischer authorized him to maintain possession as an agent of Greene County while a registration transfer was pending, and he possessed the machine gun under that official authority and in the capacity of an agent of the sheriff. Indeed, that was the gist of the factual issue presented to the jury by the attorneys in closing arguments; the prosecutor did not rely on the "official capacity" language. The instruction adequately informed the jury of the relevant considerations and were not sufficiently misleading, confusing, or prejudicial to merit reversal.

Next, Spicer challenges the district court's failure to include an instruction on "implied authority" to possess a machine gun. According to Spicer, he had implied authority from Greene County (specifically, the sheriff) to maintain possession of the machine gun, and the jury should have been instructed on this theory. He also asserts the district court should have instructed the jury that a "reasonable belief" of authority is sufficient. To the extent Spicer actually proposed an implied-authority instruction,[2] he offers no support for such an instruction as applied to

---

Spicer did not object. Thus, the government contends Spicer did not preserve an objection. We need not decide that question, because the standard of review is not determinative.

[2]Spicer's proposed § 922(*o*) instruction did not include implied authority. Although Spicer did request an instruction on implied authority for four other counts related to his acquisition of the machine gun, this instruction was expressly limited to an employee's authority to sign an employer's name, and would not have applied to the § 922(*o*) count.

Spicer's counsel brought up implied authority during the charge conference, possibly (but not apparently) in relation to the § 922(*o*) count. The court disagreed that the instructions required further discussion of implied authority, and there was no further discussion of implied authority until just before the jury retired to deliberate. The court asked: "Before I send them

§ 922(*o*); in his proposed jury instructions, he cited Ohio agency-law cases discussing an agent's authority to bind a principal in a civil insurance dispute. *E.g.*, *Damon's Mo., Inc. v. Davis*, 590 N.E.2d 254 (Ohio 1992). Spicer's reasonable-belief argument is similarly unsupported. *Cf. United States v. Dodson*, 519 F. App'x 344, 350–51 (6th Cir. 2013). In any event, the district court's more general instruction on authority did not foreclose Spicer's theory of the case. Accordingly, Spicer has failed to demonstrate that the jury instructions were misleading, confusing, or prejudicial.

Lastly, Spicer contends that the court's § 5861(d) instruction confused the jury in a way that infected the § 922(*o*) conviction.[3] Under § 5861(d), it "shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." We explained in *United States v. Springer*, 609 F.3d 885 (6th Cir. 2010), that although this provision "is unambiguously devoid of express exceptions, providing only that no individual can legally possess an unregistered firearm," there is nonetheless an "implicit exception" for a person with "the authority, conferred upon him by the United States, to receive or possess a given firearm [that is not registered to him] at a given time." *Id.* at 889–90. *Springer* concerned federal rather than state authority; however the

back, is there anything else anybody wants to put on the record?" R. 62, Trial Tr., PID 957. Counsel replied: "Just preserve the objections, the jury instructions on implied authority and adoption—." *Id.* at PID 957–58. The court said: "Well, the way I've also treated that stuff is, you sent me a copy. If it wasn't filed, it should have been filed." *Id.* at PID 958. "But," the court added, "if you guys want to make a proffer afterwards just to make sure—I mean, you never know." *Id.* Counsel made no further objections. Thus, the court apparently viewed the implied-authority objection as limited to the substance of the written instructions that counsel filed, which would not apply to the § 922(*o*) count.

Accordingly, the government argues that Spicer did not preserve this objection either. Again, we need not reach that question, because the standard of review is not determinative.

[3]Spicer did not raise this issue in his opening brief. Although the argument could be considered forfeited, we address it on the merits.

reasoning supporting an exception—that it would be a "manifestly absurd" result that "no individual could legally possess a firearm that is in the possession or under the control" of a government agency—applies equally to state law enforcement. *Id.* In line with this reasoning, the district court instructed the jury that lack of authority to possess the firearm is an element[4] of a § 5861(d) violation, using the definition provided in the § 922(*o*) instructions.

According to Spicer, the § 5861(d) instructions on registration and authority[5] created an impossibility that required the jury to convict on the § 922(*o*) charge. Spicer contends that a person is inherently without authority to possess a firearm not registered in his own name under § 5861(d); and, because a person may not register a machine gun in his own name under § 922(*o*), it was impossible for the jury to conclude that Spicer had authority for § 5861(d) purposes. Because the district court used the same authority instruction in the § 5861(d) and § 922(*o*) charges, the argument goes, the instructions amounted to a directed verdict on both counts. However, this conclusion does not follow from the district court's § 5861(d)

---

[4]Again, we note the government's assertion that authority is properly considered an affirmative defense. Because the government concedes this issue was not raised below, we proceed accordingly.

[5]The relevant instructions provided:

> Fourth, Mr. Spicer was not authorized to possess that machine gun; and
>
> Fifth, that the firearm was not registered to Mr. Spicer in the National Firearms Registration and Transfer Record. It does not matter whether Mr. Spicer knew that the firearm was not registered or had to be registered. However, this section does not apply to a machine gun registered to a law enforcement agency and possessed by a member of that agency during the course of his or her employment during the performance of official duties.
>
> Okay. The terms "knowingly," "possessed," "machine gun," "knew" and "authorize" have the same meanings as set forth previously with respect to Count 1.

R. 62, Trial Tr., PID 894. The instruction on the registration element included an additional exception for employed law-enforcement officers, but this instruction was distinct from the instruction on the authority element.

instructions. The instruction on authority was distinct from the instruction on registration, and permitted the jury to conclude that Spicer had authority to possess the machine gun even though it was not registered in his name. Thus, contrary to Spicer's suggestion, the district court's instructions did not create an impossibility that would confuse the jury. If the jury concluded (as Spicer argued) that Spicer possessed the machine gun under the authority of Greene County, the district court's instructions directed that the jury should find him not guilty of violating both § 922(*o*) and § 5861(d). Under these circumstances, the instructions do not require reversal.

## III.

For these reasons, we **AFFIRM** Spicer's § 922(*o*) conviction and **VACATE** his § 5861(d) conviction.